ALBERT M. POWELL et al., Respondents, v. INTERNATIONAL HARVESTER COMPANY OF AMERICA, Patrick D. Norton, Mary E. Norton, and Herman Rutten as Sheriff of Ramsey County, North Dakota, Appellants.

(170 N. W. 559.)

**Conveyance of land — deed — to one who was agent of the Harvester Company — evidence — agent did not take deed or hold land in trust for company.**

1. An action was brought by one Powell against the International Harvester Company of America, Patrick D. Norton, and Mary E. Norton, et al., for the purpose of having a deed to certain land declared to be held in trust for the International Harvester Company. The deed was executed by the owner, one Largent, to Patrick D. Norton, who was the collection agent of the Harvester Company. *Held* that Patrick D. Norton did not take the deed nor hold the land, therein described, in trust for the International Harvester Company.

**Fraud in transfer of land — question of — one not party to transfer — cannot be asserted by — a stranger is in no position to assert fraud — must be by one of parties.**

2. In a transfer of certain land by deed from Largent, the owner, to one Patrick D. Norton, it is held that if fraud existed in procuring such transfer, Powell, the plaintiff, who had a mortgage upon the land conveyed by the deed, which mortgage was being foreclosed, not being a party to the conveyance of the land by deed from Largent to Norton, is in no position to assert fraud. If there were fraud in the procuring of the deed from Largent by Norton, it is a matter which can only be asserted by the parties to the transaction, in this case, Largent.

Opinion filed November 18, 1918. Rehearing denied January 8, 1919.

Appeal from the District Court of Ramsey County, North Dakota, Honorable *C. W. Buttz,* Judge, wherein *Cowan, J.,* made findings and order for judgment. Reversed and remanded.

*M. H. Brennan (E. T. Burke,* on oral argument), for appellants.

A stipulation and settlement of matters involved in pending litigation cannot be arbitrarily withdrawn by one of the parties in order to enable him to make some different claim to that expressed and acknowledged in such stipulation and settlement, without returning or offering in good faith to return the consideration. Schaetzel v. Huron (S. D.) 60 N. W. 741; Deere & W. Co. v. Hinckley (S. D.) 106 N. W. 138; 31 Cyc. 525; Northern P. R. Co. v. Barlow, 20 N. D. 197, 126 N. W. 233.

An intervener must have an interest in the subject-matter of the litigation, or he has no right to come in. In the transfer of land, fraud can only be claimed by an interested party to the transaction. Carlson v. Wyman (Mich.) 155 N. W. 418; Sutton v. Consol. Apex Min. Co. 12 S. D. 576, 82 N. W. 188; Crouch v. Dakota, W. & M. R. R. Co. 22 S. D. 263, 117 N. W. 145; Re Kaeppler, 7 N. D. 307; 14 Am. & Eng. Enc. Law, 148; Wells v. Cook, 16 Ohio St. 67, 88 Am. Dec. 436; De Grasse v. Verona Min. Co. (Mich.) 152 N. W. 242.

Where a party acts with full knowledge of all the facts he cannot base a claim of fraud in a transaction to which he was not a party and reap a benefit. Knight v. Linzey (Mich.) 45 N. W. 377.

*C. J. Adamson* and *H. S. Blood,* for respondents.

Appellants claim that until Largent repays to Norton the money received, neither plaintiff nor Largent can be heard to question the fraud. Such is not the rule in equity.

"It would be a mockery of justice to say that when a man is checkmated in his attempt to perpetrate a fraud, he may still recover from the object of his unlawful aggression his outlay in the furtherance of that attempt." Nichols v. Russell (Mo.) 123 S. W. 1023.

GRACE, J. Appeal from a judgment of the district court of Ramsey county, North Dakota, Honorable C. W. Buttz, judge.

This is an action to cancel and reform a certain deed given by one John Largent to Patrick D. Norton to Lots 1 and 2, and the S.½ of the N.E.¼ of section 1, township 157, north of range 63 west. The action is for the further purpose of compelling specific performance of a certain contract alleged to have been entered into with reference to said land between the International Harvester Company of America and the plaintiff. The cancelation of the deed is asked upon the ground

of .fraud alleged to have been perpetrated by Patrick D. Norton upon John Largent in procuring the said Largent to execute the deed in question to said land, Largent at the time of the execution of the deed being the owner in fee of said land, subject to certain encumbrances. The complaint fully sets out the cause of action along the lines above dictated, and further sets forth the alleged false and fraudulent representations of Partick D. Norton to John Largent at the time of the execution and delivery of the deed in question. It also alleges the ownership of the land in dispute in Largent; the giving of the mortgage thereon to Powell and the default and foreclosure of the same and the sale by foreclosure on May 4th, 1903, and the purchase of the land at foreclosure sale by Powell. It alleges the judgment in favor of the Warder, Bushnell, and Glessner Company against Largent on January 20, 1896, for $131.78 in the justice court of Peoria, Illinois, and the assignment of said judgment to the International Harvester Company. Largent filed a complaint in intervention wherein he admitted the existence of the judgment against him above referred to. The intervener in substance alleges that in the spring of 1904, Patrick D. Norton, then and sometime prior thereto, was the traveling representative or agent of the International Harvester Company of America and so represented himself to be to the intervener and demanded payment of the judgment; that he told Norton that he was unable to pay the judgment thereupon Norton asked the intervener to give a deed to the International Harvester Company of America to the real property involved herein, in order that the International Harvester Company might redeem from the Powell foreclosure; that if the intervener would execute said deed, the International Harvester Company and Patrick D. Norton would cancel, satisfy, and discharge the judgment then held by the Harvester Company; that the intervener supposed and Norton represented to him that the deed ran to the Harvester Company, but notwithstanding the agreement the intervener has been informed and verily believes the deed ran to the defendant, Patrick D. Norton individually; that in truth and in fact said deed was delivered for the International Harvester Company of America, and not for Patrick D. Norton individually; that the judgment against intervener has not been canceled or discharged. The intervener alleges the equity in real estate to be of the value of $2,200.

It is further alleged redemption from the Powell foreclosure was made by virtue of said deed and that Mary Norton, sister of Patrick D. Norton, to whom the land was transferred by Patrick D. Norton, took the same with full knowledge and notice of all the circumstances under which the deed had been obtained. The intervener did not appeal from the judgment.

The International Harvester Company, in substance, in its answer states that the transfer of any real estate from John Largent to Patrick D. Norton was made to Norton personally; that defendant admits entering into the written agreement, Exhibit A, with Powell and alleges it has carried out its part of the agreement; that it had deposited in the Ramsey County National Bank at Devils Lake, an assignment of the judgment mentioned and described in Exhibit A and demanded the sum of $130, balance due under contract which Powell refused and still refuses to pay and alleges the payment by Patrick D. Norton to John Largent of the consideration agreed to be paid for the said real estate.

Patrick D. Norton for his separate answer admits that he was collector for the International Harvester Company and did, on the 22d day of April, 1904, call upon John Largent and requested payment for the judgment heretofore mentioned. He admits the execution and delivery of the deed from Largent to him of the land in question, and denies that the International Harvester Company had any interest in the sale, conveyance, and transfer of the land from Largent to him. He alleges the sale, transfer, and conveyance of all his right, title, and interest of the premises to Mary E. Norton and the redemption from the foreclosure sale by paying the sheriff of Ramsey County, North Dakota, $381.32, and alleges that Mary E. Norton had no notice or knowledge of equities on the part of the plaintiff. He alleges payment to John Largent of the consideration in full agreed to be paid by the defendant to Largent as purchase price of said real estate. The International Harvester Company also interposed an answer to the complaint in intervention, which, in substance, is largely similar to the answer of the defendant. The facts, concisely stated, are as follows:

Largent was the owner of the land in question. He mortgaged the same to Powell. Powell foreclosed and the sale was had May 4th, 1903. Time for redemption expired April 27, 1904. Patrick D.

Norton received a deed for the land from Largent and thereafter deeded it to his sister, Mary E. Norton, who made redemption by paying the required amount of money to the sheriff as aforestated. Warder, Bushnell and Glessner Company had judgment in the amount hereinbefore stated against Largent. The Harvester Company admits the execution and delivery of the deed to Patrick D. Norton and denies it had any interest in the sale, conveyance, and transfer of the land to Patrick D. Norton. The plaintiff claims Patrick D. Norton was the agent of the International Harvester Company and that the transfer to him was for the benefit of the Harvester Company. It is claimed by plaintiff that Patrick D. Norton represented to Largent that if Largent would give him a deed for the land, he would satisfy the judgment recovered against him by the Warder, Bushnell, and Glessner Company. The judgment was never satisfied.

The plaintiff claims that Norton charged the International Harvester Company the $1 which he paid to Largent at the time the deed was acknowledged. In this we think the plaintiff is mistaken. The testimony clearly shows that Norton paid Miller, the notary public who took the acknowledgment, $5 for his services, and this was not charged to the International Harvester Company but was paid by Norton personally. Miller testified that, at Norton's request, he advanced $1 which Norton paid to Largent. It is clear that the $1 paid to Largent by Norton was not charged to the International Harvester Company. Norton made two trips to Largent's. The first trip he was driven there by Dr. McNaughton, veterinarian, who, in his testimony, says his charges were $2.50, and he signed a voucher to the International Harvester Company for $3.50. Whatever the extra $1 was for in such voucher, it is clear from the testimony of Miller, who is plaintiff's witness, that it is not the $1 that was paid by Norton to Largent, and it is clear that the $1 paid by Norton to Largent, which he procured from Miller, was never charged to the International Harvester Company. It is also clear that the first trip made by Norton to Largent's in company with McNaughton was for the purpose of looking after the collection of the judgment above referred to, and in doing this he was looking after the Harvester Company's business as it was looking after the collection of the judgment, and there seems to be no irregularity in charging the expense of the trip to the Harvester Company.

The fact that this $3.50 voucher was charged to the Harvester Company, in no manner shows or tends to show that Norton was acting for the Harvester Company when he took the deed of the land in question to himself.

The agreement between the International Harvester Company of America and A. M. Powell is as follows:

"This agreement between International Harvester Company of America and A. M. Powell is to the effect that for $150 cash the judgment against John Largent dated January 20, 1896, for $131.28, justice court, Peoria Co., Illinois, is to be assigned to George W. Mooers, and if any quitclaim deed or other deed from John Largent to this company should be recorded at Devils Lake, North Dakota, on or before May 6, 1904, the land so conveyed is to be quitclaimed back to George W. Mooers. This refers to lots 1 and 2 S.½ of N.E.¼, section 1, township 157, range 63, and in consideration of the above $150 of which $20 is received to-day, the company agrees to not in any way hinder issuance of sheriff's deed on above land by virtue of the foreclosure proceedings by A. M. Powell which entitle him to sheriff's deed by May 6, 1904.

"If any quitclaim deed has been taken by our representative to this company and not recorded such instrument will be surrendered to George W. Mooers. The assignment and deed, if any, are to be sent to Ramsey County National Bank at Devils Lake, North Dakota, and to be surrendered to George W. Mooers or A. M. Powell on payment of the balance which is $130. Said deed if any to read to George W. Mooers as grantee.

"Signed by the Company per collecting agent Larson and by Powell."

In the trial court, the judgment is in favor of the plaintiff. From the judgment Patrick D. Norton and Mary E. Norton appealed. The intervener did not appeal and his claims as set forth in his complaint of intervention are not at this time before the court. Mary E. Norton made redemption of the land by paying to the sheriff of Ramsey county, the sum of $381.32, and received a sheriff's certificate of redemption and thereafter took possession of the land and had it cropped. Her testimony shows that she agreed to pay Patrick D. Norton $500 for the land and that $300 of the same was paid by her making a

41 N. D.—15.

loan on a piece of land near Bartlett, of the proceeds of which Patrick D. Norton retained $300 and she received $200.

From the foregoing it appears that the entire amount of the foreclosure was paid to the sheriff by Mary E. Norton for the redemption from the Powell mortgage foreclosure. It is apparent therefore that all Powell had to do to get his money and all of it, was to call at the sheriff's office and receive the same. He would then have no further interest in such land by reason of the mortgage nor the foreclosure thereof, and would no longer be a creditor of Largent for Largent's obligation to him would have been fully paid by the redemption.

If Patrick D. Norton perpetrated a fraud upon Largent, and procured the deed from Largent to himself by means of false and fraudulent representations, that was a matter which is personal between Largent and Norton and of which the plaintiff cannot be heard to complain, and especially not since the record clearly shows that the amount of money necessary to redeem from his foreclosure has been paid in to the proper place, the sheriff's office for the purpose of redeeming from the foreclosure. It is clear that Largent did not give the deed to Patrick D. Norton in order to defraud the plaintiff. The plaintiff, in any event, could not be defrauded out of his mortgage and there was no attempt to do so, the full amount of the money necessary to redeeem from the mortgage having been properly paid. When Largent gave the deed to Patrick D. Norton, he transferred to him the legal title of the land. If he were induced to do this by a fraud, that is personal to him and he alone may complain, unless the transfer was made in order to defraud creditors when a different question might arise. Powell was in no manner a party to the deed and is in no position to assert fraud, and, in this case, he cannot do so. The matter of fraud in this case is between Patrick D. Norton and Largent and then only, unless it should appear that Mary E. Norton had notice or knowledge of the fraud, if any, and as the record now stands, it does not so appear. Her knowledge or notice of fraud would become material only upon that issue being presented as between Largent and Patrick D. Norton. It does appear that she purchased the land from Patrick D. Norton for $500, that he was instrumental in procuring a a loan for her on other lands which she owned and part of which money was paid upon the purchase price, and that he acted for her

in looking after the payment of the Powell mortgage, that is, by making the redemption, in her name, from the foreclosure sale.

The 8th, 9th, 10th and 11th findings of fact of the trial court relate to the alleged fraud of Patrick D. Norton in procuring the deed to said land from Largent. Upon these must rest principally the conclusions of law at which the court arrived. Upon examination of the conclusions of law reached by the court, it will be noticed that the court based its conclusion solely upon the question of fraud. In order to demonstrate this more clearly, we will set out at length the findings of the court in this regard. They are as follows:

"That the deed to the premises heretofore described of John Largent, intervener, to the defendant, Patrick D. Norton, dated April 27th, 1904, recorded in book 170 of deeds on page 237 in the office of the register of deeds of Ramsey county, North Dakota, was obtained by fraud and misrepresentations and that the same is void and canceled of record.

"That the defendant, Mary E. Norton, was not an innocent purchaser of the premises described in said action from the defendant, Patrick D. Norton, and that the deed for the said premises from the defendant, Patrick D. Norton, to the defendant, Mary E. Norton, dated May 4th, 1904, and recorded in book 190 of deeds on page 485 in the office of the register of deeds of Ramsey county, North Dakota, should be canceled of record."

The only other conclusion of law reached by the court is that Albert M. Powell is entitled to sheriff's deed based upon the foreclosure of the mortgage and that the filing of the certified copy of the judgment in this action in the office of register of deeds would have the effect of canceling of record the said deed of Largent to Patrick D. Norton and the deed from him to Mary E. Norton. It is clear from these conclusions that the court considered no question except that of fraud. Its conclusions of law, as we have seen, relate almost wholly to this subject and, as we view the matter, its conclusions are entirely wrong, measured by the result at which the court arrived and the party benefited, that is, A. M. Powell. The court's conclusions might be right if the action were being prosecuted by Largent against Patrick D. Norton, if they were supported by competent testimony. Powell is in no position to raise the question of fraud, hence he can receive no

benefit from the conclusion of law at which the court arrived. The court finds, in its 11th finding of fact, that the International Harvester Company of America did not authorize Patrick D. Norton to take or accept a deed of conveyance of the premises of the intervener and did not accept the same in payment of the judgment in question, and had not released the intervener from the payment of the judgment. Assuming this to be true, and it being conceded that Patrick D. Norton took the deed in his own name, he could not be said to hold it in trust for the Harvester Company. He claims to have taken it on his own account and his own responsibility and to himself individually. Largent also signed up a stipulation and acknowledged it to that effect, and also stipulated to dismiss this action by way of intervention.

The Harvester Company, in its answer, claims that Norton bought it substantially as he alleges. Under these circumstances and considering all the testimony including that of Largent, and taking into consideration the contract, exhibit A, between the International Harvester Company and Powell, we do not believe there was any resulting trust in favor of Powell; neither do we believe the plaintiff is in position to ask for specific performance of that contract, which relates only to an assignment of the judgment, and provides, further, that any quitclaim or any other deed from Largent to the company should be recorded at Devils Lake, North Dakota, on or about May 6th, 1904, the land so conveyed to be quitclaimed back to George W. Mooers. No such deed appears to ever have been delivered or recorded. This referred to the land in question. The further provision was to the effect that if any quitclaim deed had been taken by representatives of the company to the company and not recorded, such instruments would be surrendered to George W. Mooers. There is no evidence that any such deed was ever taken to the company. There is no evidence to show that the International Harvester Company ever received a deed to the land, or any evidence to show that any of its representatives took a deed to the company. As we view it, this is not such a contract as may be enforced by specific performance because of the uncertainty of the facts. There are many disputed questions of fact in the case. This being true, the contract, we do not believe, is subject to be enforced by specific performance. Courts of equity will neither decree nor enforce specific performance of con-

tracts requiring, first, the determination of questions of fact. Specific performance ought not to be decreed unless the contract is definite and certain in its terms. Every material element of the contract should be certain and the minds of the parties should have met and agreed upon all the material terms of the contract, and no material part of the contract should be in dispute. In the case at bar the first disputed question is whether the deed in question was made to Patrick D. Norton individually. Plaintiff seriously contends it was not. Defendant just as seriously and strongly contends that it was, and finally produces the written admission of Largent to that effect which was acknowledged before a notary public.

It also appears that Largent entered into a written stipulation dismissing this action by way of intervention. Under these conditions, specific performance ought not to be decreed. There is evidence in the record that at the time Patrick D. Norton took the deed to the land, he considered he had made a profit of $1,000 by the transaction. Largent in his complaint in intervention claimed there was equity in the land of $2,200. It may be assumed that Norton would make a profit of somewhere between $1,000 and $2,200, this based upon the value of the land at the time of the transaction. The land, of course, may be worth a great deal more at this time. It is also clear that if Powell should be permitted to prevail, he would make the same profit. The amount of money due on Powell's mortgage which was foreclosed is in the hands of the sheriff for him and has been since the time hereinbefore stated. He cannot be a loser as a creditor. What he does lose is the opportunity to acquire the value of the equity of such land without giving any consideration therefor. We are clear that Powell is in no position to raise the question of fraud, it being a matter personal to Largent, nor can the court of equity decree specific performance of the contract, exhibit A, by reason of the uncertainty and indefiniteness of its terms and the several disputed question of fact relating to the contract. Largent has not taken an appeal from the judgment to this court, and for that reason we cannot determine his rights in the matter, if any.

Judgment appealed from is reversed and the case is remanded for further proceedings in harmony with this opinion. The appellant is entitled to recover statutory costs on appeal.

CHRISTIANSON, J. (concurring specially). I concur in the conclusion reached by Mr. Justice Grace; but I desire to supplement, to some extent, the statements of facts contained in the opinion prepared by him. One John Largent owned the land involved in this action. He mortgaged it to the plaintiff, Powell, who foreclosed the mortgage and purchased the land at foreclosure sale, on May 4th, 1903, for the sum of $340.47. The defendant, Patrick D. Norton, was a collector for the International Harvester Company. As such collector he called upon Largent on April 27th, 1904, with regard to a judgment which the International Harvester Company had for collection against Largent. This litigation grew out of the transaction then had between Norton and Largent. There is some conflict between Largent and Norton as to what was said at the time. Norton testifies:

"I drove out to the McIsaacs farm; I drove out there for the purpose of seeing Largent in regard to the payment of a judgment that the International Harvester Company had to collect; I met Largent there and asked him if he could pay that judgment, he said he couldn't pay it, he didn't have the money to pay it then; I asked him if he repudiated the judgment; 'No' he said he didn't; and then I asked him if he would confess judgment in this state—the judgment was from Illinois— 'No,' he said he would not confess judgment he didn't want to have any judgments against him; then I asked him if he would at any time in the future pay anything on the judgment; he said 'Yes' that if I let it go until fall he would pay something on the judgment. Before that I asked him if he had any property, and he said 'No' he didn't have any property at all of any kind; and I asked him, None at all? 'No,' he said he didn't have any whatever. After he said he would pay something on the judgment in the fall if I would let it go I asked him if he didn't have some land up north of Starkweather at one time, and he said, 'Yes,' I says, What did you do with it? 'Well,' he said 'that was sold under a mortgage,' and he says, 'That is gone; I haven't got anything to do with it,' he says 'I can't do anything, I can't pay the mortgage;' I says, When was it sold? 'Well,' he said, 'it was sold on,'—he didn't know just when. Well I says, Did you ever try to redeem it? 'Well,' he said 'Yes' but he couldn't raise any money because his wife would not sign with him, I asked him why? 'Well,' he said, 'she was living in'—well, I wouldn't say Wisconsin or

Illinois but in one of those states— and that she had never lived with him and she wouldn't sign, they were not living together. Well, I says, now the time for redemption on that mortgage is near up as I happen to know that, I said, and I asked him if he was going to redeem it, 'No' he said as before he couldn't do anything with it.

"Now, I will tell you, I said, I live in Devils Lake and I am an attorney there, and I might be able to get something out of that land if you gave me a deed to it. I don't know, I said, that I can do anything with it. I says where does your wife live and what is her name and address and he told me and gave her name and address; I says, I may be able to arrange it so I can get something out of it if you give me a deed, and then I said would you just as soon give the land to me as to Powell? He said, 'Yes, I haven't got any claim on it,' that is what he said he didn't have any claim on the land or didn't expect to get anything out of it. Now, I says, I will tell you, Largent, if you give me a deed to the land, and I can get something out of it, so I can make something on the deal, I will give you twenty-five or fifty dollars or seventy-five dollars, out of the deal, and you can have that money for yourself, and pay it on the judgment or do what you please with it, He says, 'all right,' and I says, to show you I am all right, ask McNaughton or McIsaacs regarding me; I have lived in the county a long time, and they will tell you what I say will be all right, 'Yes,' he says, 'I will give you a deed to the land;' and I then went over to the buggy and made out a quitclaim deed."

Largent was sworn as a witness in behalf of the plaintiff. On his direct examination he testified as follows with respect to the conversation; He (Norton) said he was collecting for those people (Warder, Bushnell & Glessner Company) and he asked me if I didn't have an interest in a claim there in this county somewhere and I told him I didn't know whether I did or not, "I should have an interest in a claim here," or something like that.

Q. What did he mean by a claim?

A. A farm.

Q. What else did you say?

A. And he asked me if Powell didn't have an interest in it in some way; and I told him, well, he did; that he had furnished the

money for me to prove on the claim, when I proved up, and I never paid him back, and he said he would foreclose, or had foreclosed, or something like that I think.

Q. Norton told you that Powell had foreclosed?

A. Yes, or was about to, something like that; and he said if I would give those people a deed that he would redeem or turn me in my mortgage, my judgment notes, or something like that.

Q. What people?

A. The Warder, Bushnell, & Glessner Company or the International Harvester Company. It is all the same I guess is it not?

But on cross-examination he testified in answer to questions put to him by Mr. Norton.

Q. You remember me asking you where your wife was?

A. Yes, sir.

Q. And do you remember you told me that the reason you couldn't loan any money on the land was because your wife would not sign with you?

A. Yes, sir.

Q. You remember me asking you where your wife was and telling you I would write to her?

A. Yes,

Q. And if I got the matter straightened up I would pay you fifty or seventy-five dollars out of it, if I got it straightened up so I would get something out of it; wasn't that the conversation?

A. Yes, I believe that is right.

Largent further admitted that he subsequently gave an order to one Gunberg, upon Mr. Norton requesting Norton to pay "the $50 still due me on my land deal with Mr. Norton." Largent further admitted that when he gave the order to Gunberg he had some conversation with him with respect to the land deal. The following questions were propounded to and answers given by Largent with respect to the conversation had between Largent and Gunberg:

Q. And did he (Gunberg) ask you the further question, what was

Norton paying you for the deed to this land, and didn't you answer him and say that he was paying $60?

A. I believe there were such words.

Q. He was to pay $60?

A. $60 or $70 I said.

Alex McIsaacs, one of the subscribing witnesses to the deed executed by Largent was called and testified as a witness on behalf of the plaintiff. He testified that he was working in the field with Largent and was called over and signed the deed as a subscribing witness. He further testified that he heard no reference made to the International Harvester Company and that Norton stated that there would be a chance for Largent to make some money out of the land. McIsaacs further testified that Norton said that these was a chance for him (Norton) to make something out of it.

As bearing upon the question whether the deed was actually taken to or for the benefit of the International Harvester Company attention is called to the fact that Norton charged up the expense, for the livery incurred on the first trip, to the Harvester Company. It is true Norton did charge this expense to the Company. But it is also true that Norton had received specific instructions from the general collection agent to attend to this claim, and the trip was apparently necessary to carry out such instructions. The evidence shows that before making the trip Norton had endeavored to get the plaintiff Powell to take up the judgment against Largent, but without success.

Larson, the general collection agent of the International Harvester Company testified that he had a conversation with Norton regarding the Largent claim. Larson testified:

"The conversation was about this claim, about this judgment, and Norton called my attention to the man Largent having lost his land by foreclosure and the time for redemption would expire soon, which was a well-known fact, and he wanted to know if the Company would not furnish the money to redeem provided we could get the right to redeem. We then talked some about the title and he said that the Powell mortgage was one signed by him alone—by Largent alone; and he further said that he had a wife, and when I asked him why she didn't sign it, he said he didn't know, and we talked along that line

about the claim; and I told him that the company didn't want to have anything to do with real estate; that I had no authority to invest in real estate for the company; that we didn't want this land and I didn't care how cheap it was or how safe it was, I told him that I would have nothing to do with it; that was understood."

The record is silent as to whether this conversation was in person, or by telephone. But it is a reasonable deduction that it was by telephone as there is reference to telephone conversations between Larson and Norton with respect to the Largent claim. And Larson also testified that it was customary for him to talk over matters with his various collectors over the long-distance telephone almost every evening. The record also shows that Norton made a written report to Larson. The report is dated April 27th, 1904, and was offered in evidence by the plaintiff. In this report, Norton, said:

"It is a difficult matter to get in a position where we can dictate payment or get anyone to take up our claim. It is impossible for us to get judgment against this man before the time for redemption expires. As long as he will not confess judgment, we cannot have judgment entered within about thirty days, so there is no use suing him now. He has no property whatever except on equity in this land."

The report then goes on to discuss the value of the land, its location, the amount of encumbrance, and the amount necessary to redeem, and inquires whether the company would advance the money required to make redemption. The report concludes as follows: "As far as I can see it is perfectly safe. While I cannot get Mr. Largent to confess judgment, I can get him to give me his rights to the land for a small consideration. Advise me as to what you think of advancing the required amount to redeem. Think now this is the only way the company can get anything out of this difficult claim."

Plaintiff also asserts that Norton charged up to the International Harvester Company the $1, which he paid to Largent at the time of the acknowledgment of the deed. This assertion is not sustained by the record. On the contrary the undisputed testimony is to the effect that Norton paid Miller, the notary public who took the acknowledgment, $5 for his services, and that this expense was not charged to the Harvester Company at all, but was paid by Norton personally. And Miller testified that he, at Norton's request, advanced the $1, which

Norton paid to Largent.   These seem small matters, and yet they constitute some of the main propositions advanced by plaintiff in support of the findings of the trial court.

All the witnesses testified that Norton in no manner concealed the deed or any part of it, but handed it over to Largent for inspection before it was executed.   Norton also testifies, and Largent admits, that at one time in talking over the land deal, Norton suggested that Largent go and consult some attorney with respect to his rights in the matter, and that he (Norton) would reimburse Largent or rather his employer for the time lost in so doing.   These facts speak for themselves.

Let us examine the record and see what it shows with respect to Powell: He held the sheriff's certificate of foreclosure.   Norton went to see him with respect to the Largent judgment.   Powell testifies that he informed Norton that he had submitted the matter to his attorney and had been advised that the judgment would not constitute a lien against the land.   He admits that he went out to see Largent, and was informed by him that he (Largent) had executed and delivered the deed involved in this controversy.   According to Powell's testimony Largent said:   "I signed a deed for the International Harvester Company."   Either on that same day or the day following Powell went to Grand Forks and obtained the contract set out in the opinion prepared by Mr. Justice Grace.   Powell admits that he in no manner informed Larson (the agent of the Harvester Company) of the information which he had received from Largent.   And Larson testifies positively that he had no knowledge of the fact that any deed had been given by Largent at all.   Both Larson and Powell agree that Powell said he wanted to buy the judgment against Largent.   Powell prepared a proposed contract.   This proposed contract is not before us, but apparently some changes were made before it was signed. Larson testifies that Powell wanted a provision in the contract to the effect that if Largent had executed a deed running to Norton instead of to the Harvester Company that then the Company would have Norton convey to Mooers.   Larson testifies:

"My best recollection is that Powell wanted some provision in there, and I was trying not to get it in—that is, to keep it out—and *I told him that if a deed taken to him (Norton) personally was none*

*of our business, that we had nothing to do with it.* Q. That is, if P. D. Norton had taken a deed to himself personally you didn't want anything to do with it, because that was his own affair? A. Yes sir."

Powell, however, denies that he requested any provision providing for the contingency of a deed having been taken to Norton.

Powell brought the present action to enforce specific performance of the contract against the Harvester Company, and to reform the deed given by Largent to Norton, so as to make the Harvester Company the grantee in such a deed. Obviously Powell's rights in this action depend upon and are measured by the contract. The methods by and the conditions under which the contract was obtained have already been set forth. What was the situation when the contract was executed? On the one hand we have Powell desirous of getting the contract without disclosing to Larson anything with reference to what Largent has told him about the deed. Larson knows that Norton has been endeavoring to collect the claim or get someone to take it up, but has been unable to do so. And yet here comes Powell all the way from Devils Lake to Grank Forks to get a chance to buy the judgment. He proposes and talks purchase of the judgment, but prepares and insists upon a contract referring to and providing for the contingency of a deed having been given by Largent. The situation is somewhat unusual to say the least, and it would have been strange indeed if Larson had not become somewhat cautious, and he evidently did. While there is dispute as to what was said, and Powell denies that he requested a clause in the contract making reference to a deed having been taken to Norton, it does appear that the proposed contract prepared by Powell was not executed as prepared. According to a statement made by Powell, in his testimony, Larson apparently went to the trouble of discussing the matter with Attorney Sorley before signing any contract. Larson knew nothing about the deed, and Powell carefully refrained from making any disclosure with respect thereto. Larson however must have had in mind the recent conversation with, and the report from, Norton. He knew that he had informed Norton that the Company would not advance the money to make redemption and would take no real estate regardless how cheap it might be. He also knew that Norton considered it a desirable deal, one both safe and profitable. So it is indeed quite likely true when

Larson testifies. "When I made Exhibit 4 (the contract) I had in mind all the time that a quitclaim deed might have been taken by Norton personally; and I also had in mind that a deed might have been taken to the company." It is therefore quite likely that Larson desired the contract to be so worded as to exclude any obligation on the part of the company to obtain a conveyance of the land if a deed had been taken which did in fact run to Norton as grantee. That is, that he insisted that the only condition under which the Harvester Company would agree to convey was that a deed had in fact been taken "to this company." And it seems to me that the language of the contract obligates the Harvester Company to convey only in case a deed has been taken directly to that company. Of course, if the language of the contract is deemed ambiguous, it should be interpreted in light of the circumstances under which it was made and the matter to which it relates. Comp. Laws 1913, § 5907. And the terms of the contract will be deemed to extend only to those things concerning which it appears that the parties intended to contract. Comp. Laws 1913, § 5908. In any event I do not believe that the plaintiff is entitled to a conveyance of the land under the terms of the contract which he seeks to enforce. And inasmuch as plaintiff's action is founded solely upon, and seeks to enforce, such contract, it seems entirely clear to me that he has failed to establish the cause of action which he claims to have against the defendants. And apparently the trial court found it impossible, or at least it was unwilling, to find that the plaintiff had established such cause of action, because it did not decree a specific performance of the contract and a reformation of the deed. The findings and judgment ignore the theory of the case, and the issues framed by the pleadings. The findings are to the effect that the deed from Largent to Norton is a nullity, and the judgment is that this deed and the deed from Norton to Mary E. Norton be canceled. This judgment disregards the pleadings and the issues tendered, and its effect is to completely annul all rights of the Nortons, the Harvester Company and Largent in the land, and to give Powell title thereto under his foreclosure. Not only will it do this, but it will in effect relieve Powell from all liability to pay the sum which he agreed to pay to the Harvester Company for an assignment of the judgment.

It will also give Powell the benefit, and impose upon Norton the loss, of certain taxes against the land which were paid by Norton. In this connection it may be noted that it is undisputed that Mary E. Norton, within the time allowed by law, paid to the sheriff of Ramsey county the full amount due on the certificate of sale held by Powell. This amount is the full amount of the certificate and interest at the rate of 12 per cent per annum from the date of sale to the date of the redemption. No question has been raised as to the regularity of this redemption,—provided Mary E. Norton did in fact have any such interest in the premises as entitled her to redeem.

As stated in the opinion prepared by Mr. Justice Grace, the controversy before us is the one between Powell and the Nortons, and this alone. The rights of Largent are not before us. It appears from the record and the evidence that Largent was induced to intervene at the instance of Powell, but he afterwards signed a dismissal of his complaint in intervention. There is some controversy in regard to whether the stipulation of dismissal should be enforced or set aside. I shall not enter into a discussion of this feature of the case, as it would serve no useful purpose to do so. The fact remains that under the judgment rendered by the trial court Powell will become the owner under the foreclosure, and the sheriff's deed which he will receive will cut of all rights of Largent in the land. Largent has not appealed. The appeal has been taken by the defendants only. An affirmance of the judgment will benefit Powell alone. Largent can in no manner be benefited by an affirmance, or, be injured by a reversal, of the judgment, and a dismissal of plaintiff's action. The question before us is not as to the rights of Largent, but as to the respective rights of Powell on the one hand and the defendants on the other. The ultimate question is: Has the plaintiff, Powell, established his cause of action against the defendants? If so, he should prevail, if not, his action should be dismissed. It necessarily follows from the views I have expressed above that I am of the opinion that plaintiff has failed to establish his cause of action, and believe that this action should be dismissed.

BRUCE, Ch. J. I concur in the opinions of both Mr. Justice GRACE and Mr. Justice CHRISTIANSON.

ROBINSON, J. (dissenting).  Few and simple are the facts of this case.  John Largent owned the land in question and for a small sum he foolishly mortgaged the same to Powell.  The mortgage was foreclosed by advertisement and at the sheriff's sale Powell bid in the land and a certificate of sale was made to him.  That was on May 4, 1903.

On April 28, 1904, P. D. Norton was the attorney and collector of the Harvester Company.  It held for collection a judgment against John Largent for $130, and as attorney for the company Norton hired a livery and went out into the country and called on Largent and induced him to make a deed of the land to satisfy the judgment. He either took the deed in his own name or afterwards inserted his name as grantee, and at once conveyed the land to his wife and then in her name attempted to redeem from the foreclosure by paying to the sheriff the sum for which the land had been sold with interest.  In the meantime, to-wit: on April 30, 1904, Powell made with the Harvester Company a written contract whereby in consideration of $150, it agreed to transfer to Geo. W. Mooers, the judgment and its title to the land.

Pursuant to the contract Powell paid $20 cash and paid the balance of $130 to the Ramsey County National Bank and received a proper assignment of the judgment in the name of Geo. W. Mooers.  Norton took receipts for his expenses in the name of the Harvester Company and it paid the same but declined to transfer the title to the land or to induce Norton to transfer it.

This suit was brought to enforce the specific performance of the contract with the Harvester Company or to charge it and Norton as trustees for the benefit of Powell.  The trial court gave judgment in favor of the plaintiff and the Nortons appeal.

The facts do show conclusively that the deed was made for no purpose only to satisfy the judgment which Norton was employed to collect. He paid no consideration for the land and he took the deed only as trustee for the Harvester Company or the judgment creditors and their assigns.  And, of course, the title he obtained inured to their benefit and his subsequent dealings with Largent are matters of no consequence whatever.

Powell refused to accept the money which Norton paid the sheriff

in attempting to redeem and it has always remained the money of Norton. These are the facts from which there can be only one conclusion.

The judgment of the district court should be affirmed with this addition that the defendants and each of them be forever barred from asserting any title or interest in the land described in the complaint to-wit: Lots 1 and 2 and the south half of the northeast quarter of section 1 in town 157 of range 63.

## On Petition for Rehearing.

PER CURIAM. Plaintiffs have petitioned for a rehearing. The principal point urged in the petition is that this court was and is without jurisdiction to consider any question on this appeal for the reason that Largent has not been served with notice of appeal. It is doubtless true, as asserted by the plaintiffs, that a party who desires to appeal from a judgment or order must serve notice of appeal upon all "adverse" parties. For, of course, a court cannot determine the rights of a party not before it; and, hence, an appellate court has no jurisdiction to reverse or modify the judgment in such manner as shall affect the rights of the parties on whom notice of appeal has not been served, as such rights have been ascertained and finally determined by the judgment. But the lack of jurisdiction does not exist where such reversal or modification cannot affect the legal rights of the parties not served with notice. Williams v. Santa Clara Min. Asso. 66 Cal. 193, 194, 5 Pac. 86. It by no means follows that every person named in the title of an action as a party plaintiff is an adverse party on an appeal taken by the defendant from a judgment rendered in such action; or that every person named as a party defendant is an adverse party on an appeal taken by the plaintiff. An "adverse" party, within the meaning of the statute relating to service of notice of appeal is one whose interest in the judgment or order appealed from is in conflict with the modification or reversal sought by the appellant. Spelling New Tr. & App. Pr. p. 1140; Conrad v. Pacific Pkg. Co. 34 Or. 341, 49 Pac. 659, 52 Pac. 1134, 57 Pac. 1021. And "mere nominal parties or parties who have no interest that can be affected by the judgment on appeal" need not be served

with notice of appeal.   Smith v. Burns, 71 Or. 133, L.R.A.1915A, 1130, 135 Pac. 200, 142 Pac. 352, Ann. Cas. 1916A, 666; 2 R. C. L. pp. 68–69; 3 C. J. 1017.   As was said by the Supreme Court of the United States (Amadoo v. Northern Assur. Co. 201 U. S. 194, 201, 50 L. ed. 722, 726, 26 Sup. Ct. Rep. 507): "Parties having no *legal* interest in maintaining or reversing a judgment or decree are not necessary parties to a writ of error or appeal."

Plaintiffs brought the instant action to compel the International Harvester Company of America to perform a certain contract; and in order to facilitate and make such performance possible, they asked that the deed from Largent to Norton be reformed by substituting the International Harvester Company of America as grantee in such deed in place of Norton.

As stated in the former opinions Powell had a mortgage, which had been foreclosed.   The time for redemption had expired, unless the redemption made by Mary E. Norton was effective.   In its findings of fact, the trial court ignored the theory of the case, and the issues framed by the pleadings, and made findings with respect to the mortgage from Largent to Powell, the foreclosure of such mortgage, and ordered judgment in favor of Powell for a cancelation of the Norton deeds, and further ordered judgment *"that the plaintiff, Albert M. Powell, is entitled to a sheriff's deed, based upon the foreclosure of the mortgage, etc."*   The effect of this judgment was to award the premises to Powell, and to devest Largent as well as the Nortons of every interest in or claim upon the premises.   The appellants in this case are not asking for the reversal or modification of a judgment favorable to Largent.   They are asking for the reversal of a judgment favorable to Powell alone.   And there is absolutely no way, reasonably anticipatory, whereby any legal or substantial right of Largent can in any way be affected by a reversal of the judgment, and a dismissal of plaintiff's action.   Not only is this, in our opinion, the only conclusion which can be drawn from the facts referred to, but Largent's testimony as contained in the record fails to disclose any condition under which he could be benefited by an affirmance, or deprived of any benefit by a reversal, of the judgment.   Not only so, but Largent's testimony contains strong intimations that he had and has no personal interest in the litigation.   He testified that he intervened at

41 N. D.—16.

Powell's request, and would not have done so in the absence of such request. He also testified that after he had signed the stipulation for a dismissal of the petition in intervention, it was at Powell's request that he asked to be relieved from the stipulation and once more become a party.

In the petition for rehearing it is contended, in effect, that the court should not examine the record, but that "the motion to dismiss must be determined from the pleadings or, at the most, from the findings or judgment in addition to the pleadings." It is doubtless true that ordinarily an appellate court will refuse to consider the merits, or examine the entire record, on a motion to dismiss the appeal. This does not mean, however, that the court will dismiss an appeal because it necessitates an examination of the record to determine whether the motion should be granted or denied. Corpus juris says: "Where, in passing on a motion to dismiss, the court would be required to examine the entire record, the motion will not be considered in advance of a hearing on the merits. The practice in such case is to deny the motion with leave to renew it on submission of the cause on the merits. The court may examine the whole record in determining jurisdiction on a motion to dismiss." 4 C. J. 603.

We adhere to our former opinions. Plaintiffs' action is ordered dismissed. A rehearing is denied.