(87 N. W. Rep. 996.)

---

MINNEAPOLIS THRESHING MACHINE CO. *vs.* HUGH MCDONALD.

Opinion filed Nov. 6, 1901.

### Sales—Refusal to Accept Damages.

Plaintiff and defendant entered into a written contract for the purchase by the defendant of a separator and attachments on June 14, 1899. The contract provided, among other things, that security by chattel mortgage should be given on the property purchased and on an engine and six horses. The defendant therein agreed to pay the freight on the property in advance of its delivery to him. Defendant refused to accept the property on August 17th, being dissatisfied with giving security on the horses. He offered to take the property if security were taken without including the horses. This offer was refused by the plaintiff; the property being deemed insufficient as security, there being a $600 mortgage on the engine. The plaintiff brought an action for damages on account of such refusal to accept the property.

### Freight Element of Damage.

*Held,* that the plaintiff could recover for the freight charges paid by its agents, and properly pleaded in the complaint.

### Irrelevant Testimony.

That defendant was not entitled to testify on the trial as to the circumstances under which he signed the contract, the answer having alleged no affirmative defense.

### Opinion Evidence—Foundation.

That the defendant was not competent to testify as to the value of the property purchased by him, no sufficient foundation having been laid.

### Measure of Damages.

That the measure of damages, under the facts, is the difference between the contract price agreed upon and the market value of the property at the time and place of the refusal to accept the property pursuant to the terms of the contract.

### Incompetent Evidence.

That it was not error to refuse to submit such offer to take the property on less security to the jury, to determine whether such offer should have been accepted by the plaintiff.

### Duty to Minimize Damages.

That it was not an error to refuse to submit such offer to the jury for determination as to the amount of damages.

The rule of law applicable under some circumstances in actions for damages, that it is the duty of the person claiming damages to minimize such damages to the lowest sum possible, is not applicable under the facts of this case.

Appeal from District Court, Richland County; *Lauder, J.*

Action by the Minneapolis Threshing Machine Company against Hugh McDonald. Judgment for plaintiff, and defendant appeals. Affirmed.

*Freerks & Freerks,* for appellant.

The evidence offered by defendant of its willingness to repurchase the machinery on different terms should have been received and submitted to the jury, because it was plaintiff's duty to minimize damages upon defendant's breach of contract. *Sherman* v. *Port Huron Engine Co.,* 82 N. W. Rep. 413. A resale, in order to hold defendant for damages, in case of a deficiency, would have to be made according to the custom existing in the market at the time. *Pollen* v. *LeRoy,* 30 N. Y. 549, 556. It was plaintiff's duty, upon the breach of the contract by defendant, to accept defendant's offer to buy, even on different terms, in order to minimize the damages, because it is the duty of one whose contract rights are violated to do all in his power to mitigate the damages. *Lawrence* v. *Porter,* 63 Fed. Rep. 62; *Hamilton* v. *McPherson,* 28 N. Y. 72; *Dillon* v. *Anderson,* 43 N. Y. 231; *Warren* v. *Stoddard,* 105 U. S. 224; *Frick* v. *Falk,* 50 Kan. 644, 32 Pac. Rep. 360; *Lumber Co.* v. *Sutton,* 46 Kan. 334, 26 Pac. Rep. 444; *Town Co.* v. *Leonard,* 26 Pac. Rep. 717; *Heckscher* v. *McCrea,* 24 Wend. 304; *Miller* v. *Trustees,* 20 Am. Dec. 341; *Grindle* v. *Express Co.,* 24 Am. Rep. 31; *Champlain* v. *Detroit Stamping Co.,* 68 Mich. 238; *Hanies* v. *Beach,* 90 Mich 563; *Mather* v. *Butler Co.,* 28 Ia. 259; *Heavilon* v. *Kramer,* 31 Ind. 241; *Williams* v. *Coal Co.,* 60 Ill. 149; *Green* v. *Williams,* 45 Ill. 206; *Dobbins* v. *Dequid,* 65 Ill. 464. In an action for damages for breach of contract, evidence that an offer was made to place the plaintiff in a position where his damages would be materially lessened is admissible. *Beymer* v. *McBride,* 27 Ia. 114; *Lawrence* v. *Porter,* 63 Fed. Rep. 62.

*Purcell & Bradley,* for respondent.

When defendant refused to accept and settle for the machinery ordered according to the contract, the right to bring suit at once attached, just as if the contract required an absolute payment in cash. *McCormick* v. *Basil,* 46 Ia. 235; *Barron* v. *Mullin,* 21 Minn. 374, 21 Am. & Eng. Enc. L. 588 & Note 2. Upon the breach of contract appellant had any one of three remedies. 2 Sedg. on Dam. 753; *Dustan* v. *McAndrew,* 44 N. Y. 72; *Hayden* v. *Demets,* 53 N. Y. 426. Under the statute, respondent was entitled to recover the difference between the contract price and the value to the seller.

§ § 4988, 5009, Rev. Codes; *Stanford* v. *McGill*, 6 N. D. 536, 72 N. W. Rep. 938. Respondent was under no obligation, legal or moral, to resell to appellant on different terms or for a different price, in order to save appellant from the consequences of his own act. *Ward* v. *Begg*, 18 Barb. 139. It is immaterial in this case whether respondent resold the machinery in question or not. A resale of goods is only a means of taking advantage of the seller's real remedy, that is, the recovery of his actual damages, when the resale is not made in such a manner as to indicate that the price obtained is the fair market value, the seller is not allowed to recover the entire difference between the price which he gets on the sale and the contract price. 2 Schuyler's Per. Prop., 519; *Chapman* v. *Ingram*, 30 Wis. 290; *Rickey* v. *Ten Broeck*, 63 Mo. 563; *Andrews* v. *Hoover*, 8 Watts, 39. The goods being the vendor's he could resell or not at his pleasure. Benj. Sales, § 758. The vendor had the right to keep the goods at their market value and sue the buyer for damages measured by the difference between the market value and the contract price. Benj. Sales, § § 716, 717; *Bridgeford* v. *Crocker*, 60 N. Y. 627; *Canda* v. *Wick*, 100 N. Y. 127; *Hayden* v. *Demets*, 53 N. Y. 426. There is no evidence in the case tending to show that the property was resold pursuant to § 4833, Rev. Codes, so as to make subdivision one, § 4988, Rev. Codes, applicable as a proper measure of damages.

MORGAN, J. In this action plaintiff seeks to recover damages from the defendant on account of his refusal to comply with a certain contract for the sale of a threshing machine outfit, including separator and accompanying attachments. The contract was in writing, and signed by the defendant. It was an order for a separator and necessary attachments, dated on June 14, 1899, and it contained a detailed contract for the purchase of the same. The defendant therein agreed "to pay the advance freight on the machine and attachments, ordered herein," and therein further "agreed to receive the above-described machinery on arrival." The order also provided that the defendant was to give to said plaintiff certain second-hand machinery and his two notes, for the sum of $360 each, as purchase price, and to secure such notes by chattel mortgage upon property specifically described therein. The security was to be given before the purchased machinery was to be delivered to the defendant. No question is made by the defendant as to the making of, nor as to the terms of, the contract. The complaint states a cause of action for a wrongful refusal to comply with the terms of such contract, and claims damages on account of such refusal in the sum of $38, freight necessarily paid, and the further sum of $390 as general damages for the breach of the contract, and demands judgment for the sum of $428 and interest. The answer was a general denial. At the close of the taking of the testimony the trial court directed a verdict in favor of the plaintiff for the sum of $372.08. The defendant excepted to such direction of a verdict. Judgment was duly entered upon such verdict. A statement of the

case was duly settled, in which are assigned various errors alleged to have occurred during the trial.

A brief statement of the evidence will be necessary for an understanding of the case and of the errors assigned. The agreed price of the machinery purchased was $930. Secondhand machinery was to be accepted as part payment of this $930, and such secondhand machinery was of the agreed value of $210. Two notes and a chattel mortgage were to be given for the balance; that is, for $720. The security agreed to be given for the payment of these notes, aside from the purchased machinery, was as follows: One 25 horse power Pitts traction engine, bought in 1897; six good work horses. The defendant was notified of the arrival of this machine as soon as it arrived. He called at the office of the plaintiff's local agents at Wahpeton, and had a conversation with one of such agents. The gist of this conversation was that he (defendant) was not satisfied to give security on the horses, and thought the security was too much; that he thought security on the engine enough; that he then refused to give security on the horses. Later the same conversation, substantially, occurred between defendant and the other member of plaintiff's local agents. At this last conversation the defendant offered to take the machine purchased, if allowed to give security on the engine and the machinery bought, without including the horses. This offer was refused for the reason that there was already a mortgage of $600 on the engine. At this last conversation he refused to carry out the contract as entered into on June 14th, and further negotiations ceased in reference to the transaction. This refusal occurred on August 17, 1899. There is no conflict between the parties as to what occurred during these negotiations. Seven assignments of error are urged as grounds for a reversal of the judgment.

The first assignment of error is based upon the fact that the trial court permitted plaintiff to prove that it had paid the freight charged, through its agents, and allowed such payment as an item of damages recoverable against the defendant. In the contract the defendant specifically agreed to pay all freight charges in advance. The plaintiff appropriately pleaded damages on account of such payment. The object of the suit was to recover damages that would compensate plaintiff for every detriment caused by the failure of the defendant to fulfill his contract. The plaintiff will be compelled to pay these freight charges, and could not fully be compensated as to its damages unless this outlay were allowed in its favor.

Error is urged because the court sustained an objection to the question asked of the defendant to the effect that he should state the circumstances under which he signed the contract. We think there was no error in sustaining this objection. There was nothing pleaded in the answer to which an answer to such a question would have been responsive. The defendant had previously admitted in his testimony that he had signed the contract. Nothing was pleaded or suggested to the effect that there was fraud, duress, or mistake in the execu-

tion of the contract.  The contract was admitted to have been en-
tered into, and the circumstances under which it was signed were
wholly immaterial and irrelevant, under the pleadings.  *Pollen* v.
*Le Roy,* 30 N. Y. 559.

It is also assigned as error that the court sustained an objection
to a question asked of defendant as to the value of the machinery
purchased by him of the plaintiff.  The objection to the question
was that the defendant had not shown himself competent to testify
as to such value.  The only evidence on which he based his compe-
tency to so testify was the following:  "My business is farming and
threshing.  I have been engaged in the threshing business 25 or 30
years."  No testimony that he had any knowledge concerning the
value of any kind of machinery, nor that he was ever engaged
in buying or selling such machinery as was involved in the subject
of the inquiry.  No valid reason can be urged in favor of admitting
his answer to such question, in view of the meager foundation
laid.  Furthermore, it was the market value of the machinery at
the city of Wahpeton at the time of the refusal to comply with the
contract that was in issue in the case.  The question asked called
for an answer as to the value of the machinery, no time being given.

The remaining assignments may be considered together, as they
involve the same subject,—the refusal of the trial court to submit
the case to the jury.  As before stated, it appears from the evi-
dence that the defendant offered to take this machinery about the
time of his refusal to comply with the contract of purchase if the
plaintiff would accept security the same as originally agreed upon,
less the security on "six good work horses."  This the plaintiff
refused to do, because there was a $600 unpaid mortgage on the
engine which was a part of the offered security on this proposed
new contract.  The appellant now claims that this offer should have
been submitted to the jury, as it was for the jury to determine
whether or not this offer to repurchase was such an offer as a reas-
onably prudent person engaged in the business of selling machin-
ery in the city of Wahpeton should have accepted.  His conten-
tion is that the plaintiff was under a legal duty to so act as to
reduce the defendant's damages on account of his failure to perform
his contract to the very lowest sum, and he claims that, had he then
resold the machinery to defendant, no damages would have re-
sulted.  Under the facts of this case we cannot accede to either
of these propositions.  Immediately upon the refusal of the
the defendant to receive the separator and attachments, the plaintiff
was wholly absolved from any such duty towards the defendant
in respect to the transaction.  Defendant had broken his contract,
and plaintiff could not legally be forced to deal with him on the
basis of less security, which he deemed insufficient and liable to
be followed by loss.  The title to such property was still in the
plaintiff.  He could deal with it, under the facts of this case, as
though he had never contracted to sell it to the defendant.  He
could not, of course, sell the property wrongfully and at a sacrifice,

and then claim the price received as a basis on which to found his damages. But, so long as he only claims damages based on the market value of his property, it is immaterial whether he sold it or not. He dealt with it as his own property, and had a right to do so. The plaintiff sold the property in August, 1900, but the evidence does not show at what price. The evidence shows, without any conflict, what the market value of this property was at Wahpeton at all times from the day of the defendant's refusal to receive it up to the summer of 1900. As we view the law of this case, the question of reselling by the plaintiff is not necessarily involved. Of course, the plaintiff might have proceeded to sell it, under § 4833, Rev. Codes. If it had done so, then the price received on such reselling would have been controlling as a basis from which to determine the damages by reason of the refusal to receive the property. But the evidence shows that that was not the theory on which the case was tried, and the trial court adopted the rule that the plaintiff was entitled to damages equal to the excess of the contract price over the market value of the property at the time of defendant's refusal to receive it. However, we need not dwell upon the rule of damages to be followed in this case. The plaintiff relies upon the measure of damages laid down in § § 4988, 5009, Rev. Codes. This court has held that said sections apply in cases of this kind. *Stanford* v. *McGill*, 6 N. D. 536, 72 N. W. Rep. 938, 38 L. R. A. 760. The defendant concedes that this case would govern, had not the defendant offered to take the property sold upon the new conditions proposed, —that of taking less security. As before stated, the defendant claims that this new offer of less security should have been submitted to the jury for determination as to whether it was a reasonable offer to buy on reasonable and usual terms. We do not understand that it is a province of a jury to determine whether a person owning property shall sell it on security not satisfactory to him, nor that a jury can say that a person shall not be allowed to make his own contracts in the way most advantageous to himself, without consulting the interests of the person with whom he had previously contracted. This is the logical conclusion to which the defendant's proposition leads. To so hold would be to place a premium on violations of contracts. If the defendant could force the plaintiff to abide by the verdict of a jury as to whether he should have accepted this new offer,then why not if still less or even no security had been offered? The defendant claims that the plaintiff should have accepted this new offer for the purpose of lessening the injury to the defendant caused by his own wrong as much as possible. This proposition is also based upon the erroneous supposition that a person cannot dispose of his own property upon such security as his judgment dictates, without regard to the effect upon the person with whom he is dealing, who has injured such person by a violation of his contract. It is true that under some circumstances the law will compel a person to so act towards one who has wrongfully violated his contract as to lessen such person's damages when his own rights

will not, and with certainty cannot, be jeopardized. For instance, in this case, if the plaintiff had refused to deliver this machine agreeably to the contract, and the defendant had been offered another machine an attachments exactly similar to the one contracted for with the plaintiff, upon exactly the same terms, then the defendant could not refuse such offer, and claim damages thereafter from the plaintiff for his failure to carry out his contract. Clearly, the defendant could show no damages beyond possibly the merest nominal damages. Such is the case of *Lawrence* v. *Porter*, 11 C. C. A. 27, 63 Fed. Rep. 62, 26 L. R. A. 167, cited by appellant. Likewise in cases where defenses of breach of warranty are interposed, and damages claimed. If damages are claimed for some trifling defect, which could readily and inexpensively have been remedied, a person will not be allowed to claim damages which he could have so easily avoided. *Frick Co.* v. *Falk*, (Kan.) 32 Pac. Rep. 360. The case of *Haines* v. *Beach*, 90 Mich. 563, 51 N. W. Rep. 644, cited by defendant, is not in point. In that case the court says, "and that it was the plaintiff's duty to use reasonable effort to re-establish himself in business, and to reduce this loss to a minimum." In other words, the plaintiff could not remain idle, without any endeavor to repair the injury done him, and then claim full reparation to himself, thus based in part upon his own wrong. The case of *Sherman* v. *Thresher Co.*, (S. D.) 82 N. W. Rep. 413, is confidently relied on by the defendant as decisive of this case in his favor. A reading of that decision convinces us that it is not at all in point. In that case plaintiff sought to recover from the defendant on account of commissions claimed to have been earned by him in selling certain engines as agent for the defendant, under a written contract. The defendant contended that it had the absolute right, under the contract, to reject any or all orders sent to it by its agents, the plaintiffs. The plaintiffs contended that it did not have such right. The court held that the defendant did not have an absolute right to reject that order, and the question should have been submitted to the jury to determine under the evidence whether the defendant wrongfully refused to fill the order. There is nothing in the case which in any way involves the rights of purchaser and seller. It settles simply the rights of principal and agent under a written contract as involved in that case only. It is far from being an authority that the adequacy or sufficiency of offered security as beteween buyer and seller, when they are negotiating as to a resale of property when a former contract has been broken, shall be submitted to a jury to determine whether such security was sufficient; and it is far from being an authority holding that the plaintiff in this case should have accepted such offer, that defendant's damages to plaintiff on account of the breach of the contract might be reduced to the lowest degree. The plaintiff was under no obligation to resell to defendant, nor to any one else, before proceeding against the defendant for damages. The cause of action for damages on account of the refusal of defendant to accept the machine became complete at once

upon defendant's refusal to accept. *McCormick* v. *Basal,* 46 Iowa 235; *Barron* v. *Mullin,* 21 Minn. 374. "As the computation of damages is tested by the market value, the result would be the same whether the seller resold the goods, or retained them, as he might do, at a market valuation." 2 Schouler, Pers. Prop. § 519. The fact that the defendant is claimed to have been financially responsible has no bearing upon the question at all. We therefore hold that the defendant's offer to take this property on new terms, by tendering less security, considered insufficient by the plaintiff, was no offer at all, as a matter of law, and that the plaintiff, by refusing to accept, did not wrongfully violate any of the defendant's legal rights. The defendant did not have the right to have such offer submitted to the jury for any purpose, and there was no error in striking out the testimony relating to such offer, and no error was committed in directing a verdict for the plaintiff.

The defendant claims that, inasmuch as this property was sold on credit in the first instance, a resale should have to be made according to the custom existing in the Wahpeton market, and, as substantiating such contention, showed that threshing machines are there sold on credit in a majority of cases, and that such sales on credit are the usual custom. We do not think that such custom can affect this case. No custom was shown that sales or resales are there made on security that is not acceptable to the person selling. He cites the case of *Pollen* v. *Le Roy,* 30 N. Y. 549, as in point. We do not so interpret it. In that case the plaintiffs resold the property after the defendants had refused to receive it, and the court held that the resale must be made in good faith, and under a proper observance of the usages of the particular trade. In that case the defendants claimed that the property should have been sold by auction. The court says: "The ordinary usage of the trade is to effect sales of pig lead through the negotiation of brokers. This usage the plaintiffs were bound to adopt, to obtain the full and fair value of the article." Certainly this cannot be an authority that the plaintiff in this case must resell upon security deemed by him insufficient.

The contract price was not in dispute, nor the fact of a breach of the contract. The market value of this property at Wahpeton at the time of the refusal to receive it under the contract was also an undisputed fact. Hence there was no question of fact in dispute in the case. No error was committed at the trial.

The judgment of the district court is affirmed.

All concur.