[File No. 6131.]

JOSEPH HEDRICK, Administrator of the Estate of F. F. Butler, Deceased, Appellant, v. STOCKGROWERS' CREDIT CORPORATION, a Corporation, Respondent.

(250 N. W. 334.)

Opinion filed August 10, 1933. Rehearing denied October 10, 1933.

C. H. Starke, for appellant.

*Byrne & Reichert,* for respondent.

NUESSLE, Ch. J. On November 1, 1930, F. F. Butler executed and delivered to the defendant corporation a warranty deed to a tract of land in Bowman county. On the same date and as a part of this transaction, J. E. Phelan, president of the defendant corporation, executed and delivered to Butler a writing, herein designated as Exhibit C, wherein he recited that the deed in question "has been given as a trust deed to Stockgrowers Credit Corporation of Bowman, N. D., as security for any and all indebtedness of F. F. Butler to Stockgrowers Credit Corporation of Bowman, N. D., or J. E. Phelan; in other words, such deed constitutes a mortgage and according to law would have to be foreclosed the same as a mortgage before actual title were obtained."

Butler died June 16, 1931. In November, Hedrick was appointed administrator of his estate and shortly thereafter began this action. He asked in his complaint that the deed, dated November 1st, above referred to, be declared to be a mortgage and the indebtedness secured thereby paid and that title be quieted as against the claims of the defendant and any and all persons claiming by, through, or under it. The defendant, answering and counterclaiming, alleged that the deed was given as security for the payment of two notes and an open account, and asked that this security be foreclosed. The plaintiff replied, denying generally all new matters set out in the answer and counterclaim, and particularly that any claim secured by the mortgage remained due or unpaid. The issues here arise on this counterclaim. The trial court found that the deed was in fact given as security for future indebtedness; that one of the notes described in the defendant's answer and counterclaim was secured thereby, but that the other note and the open account were not, and ordered judgment in favor of the defendant for the amount of the secured note and for the foreclosure of the lien of the defendant under the deed heretofore referred to. Thereupon the plaintiff perfected this appeal, demanding a trial de novo.

The record is brief. Butler is dead. The defendant was greatly circumscribed in its testimony by reason of the statute, § 7871, Comp. Laws 1913. We think, however, that it reasonably appears from the record that the Stockgrowers Credit Corporation was a corporation

organized to handle livestock loans, a result of the agricultural depression. J. E. Phelan, the president of the Credit Corporation, was also connected with the First National Bank of Bowman. Apparently Phelan and Butler had had business relations for some time. The answer of the defendant alleges that on November 1, 1930, when the deed in question was executed and delivered, Butler was largely indebted to Phelan and the Credit Corporation. These allegations of the answer are denied by the plaintiff. The record is devoid of proof that there was any indebtedness owing from Butler to either Phelan or the Credit Corporation on November 1st. However, Butler executed and delivered his note for $3,000, known in the record as Exhibit E, payable to the Credit Corporation, dated November 6, 1930, and due May 14, 1931. This note was indorsed by the Credit Corporation and delivered to the First National Bank of Bowman. On December 20, Phelan executed and delivered to the First National Bank of Bowman a writing, in words and figures as follows:

"In consideration of the sum of One Dollar ($1.00) to me paid by The First National Bank of Bowman, hereafter called 'Bank,' the receipt of which is hereby acknowledged, and further in consideration of the credit given and hereafter to be given by said bank to the Western Security Company, $5,000.00; the Stockgrowers Credit Corporation, $4,816.00; F. C. Phelan, $5,000.00; F. F. Butler, $3,000.00; and any amount of credit hereafter to be given to the above with my approval, I hereby guarantee the payment of said promissory notes upon or for which the debtors are or may hereafter become obligated to the First National Bank of Bowman, whether as maker, endorser, guarantor, or surety."

On May 13, 1931, a new note, due November 18, 1931, Exhibit B, was executed by Butler for $3,000. This note was made payable to the First National Bank of Bowman. The note, Exhibit E, was marked "renewed" and was retained by the defendant Credit Corporation. Phelan and the other officers of the Credit Corporation were not permitted to testify as to this transaction, their testimony being rejected on objection of the plaintiff under the provisions of § 7871, supra. In October, 1931, the note, Exhibit B, then held by the First National Bank of Bowman, was taken up by the defendant corporation which

paid the face thereof less unaccrued interest to the bank. We think it also fairly appears on the record that Phelan was in fact the Stockgrowers Credit Corporation; that the corporation's moneys were kept in Phelan's account and that he paid out of that account such sums as were required by it, charging the corporation on his books with such moneys so paid; that the note, Exhibit E, was indorsed and delivered to the First National Bank of Bowman to secure credit for the defendant Credit Corporation.

From the facts thus disclosed two questions arise and are here for determination. First, as to whether under the terms of the written instrument, Exhibit C, the note, Exhibit E, was secured by the deed given by Butler to the corporation, and next, if such note, Exhibit E was so secured, whether or not the note, Exhibit B, is a renewal of Exhibit E and likewise secured by the deed in question.

Under the terms of the defeasance agreement the deed was security for "any and all indebtedness" of Butler to the Credit Corporation or to Phelan. Except by way of inference, so far as the record establishes there was no indebtedness at the time the deed was executed and delivered. Yet the deed was given and accepted as security. Within a week thereafter the note, Exhibit E, for $3,000, was executed and delivered. What the consideration for the note was, whether past or present, does not affirmatively appear other than through the inference that may be drawn from the attending circumstances. Apparently no security was given with it. But when the note was used at the bank to secure credit for the Credit Corporation it was guaranteed by Phelan. We may say here, with respect to Exhibit C, as we said in Bronson v. Chambers, 51 N. D. 737, 200 N. W. 906: "The writing is inartificially drawn. It is difficult to ascertain from its terms what the intent of the parties was at the time that it was entered into. It must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of the contract so far as the same is ascertainable and lawful. Comp. Laws 1913, § 5896. 'When a contract is reduced to writing the intention of the parties must be ascertained from the writing alone if possible, subject, however, to the other provisions of this article (§§ 5895–5921, inclusive).' Comp. Laws 1913, § 5899. It may be explained by reference to the circumstances under which it

was made and the matter to which it relates. Comp. Laws 1913, § 5907. And where a contract is ambiguous and it is impossible to ascertain the intention of the parties thereto from the writing alone, the subsequent acts of the parties showing the construction they put upon the agreement themselves may be looked to by the court and in some cases may be controlling. See Janssen v. Muller, 38 S. D. 611, 162 N. W. 393; Williston, Contracts, § 623, and cases cited; 13 C. J. 542–546." See also Baird v. Fuerst, 60 N. D. 592, 235 N. W. 594, and cases cited. It seems to us that taking into consideration the execution and delivery of the deed as security, the wording of the defeasance agreement, the fact that the note Exhibit E was given so shortly afterward, that when it was pledged Phelan guaranteed it, and the other circumstances in connection with the transaction as shown on the record, we must say that whether the consideration for Exhibit E was past or present the parties to the agreement intended to include this obligation within the meaning of "any and all indebtedness." Accordingly we hold, as did the trial court, that the note, Exhibit E, was intended to be and was secured by the deed in question.

Because of the statute, § 7871, supra, the surviving parties participating could not testify, so the record is necessarily vague and uncertain with respect to the details of the transaction. However, there can be no question but that Exhibit E, payable to the Credit Corporation, was indorsed over to the bank to secure credit for the corporation. Exhibit E fell due on May 14th. On May 13th, Exhibit B, identical in amount and in all other respects with Exhibit E, except that it was made payable to the bank, was executed by Butler. Exhibit E was not returned to Butler, the maker, but was indorsed "renewed" and was retained by the Credit Corporation. Though Exhibit B was given for a large amount, there was no security for it. But Phelan was in fact the Credit Corporation and he had already executed his guarantee to the bank covering Exhibit E, and Phelan and the corporation had Exhibit C as security. The testimony of the secretary of the Credit Corporation is that it had secured credit from the bank on the security of Exhibit E; that Exhibit B was a renewal of Exhibit E and that for the convenience of all the parties to the transaction Exhibit B was made payable to the bank. The trial court found that Exhibit B was a renewal of Exhibit E and was intended to be and was secured by the

68

deed. We think that the finding was well warranted by the evidence and we adopt it.

The plaintiff further contends that the judgment is erroneous in this, that not only is the foreclosure of the security decreed, but that the judgment on account of the debt runs against the plaintiff as administrator. There is merit to the plaintiff's contention in this respect. Nowhere does it appear that the defendant's claim was presented or allowed against the Butler estate. So the most that the defendant is entitled to is the satisfaction of the claim so far as it is possible out of the security. See § 8544a10, 1925 Supplement; Johnson v. Larson, 56 N. D. 213, 216 N. W. 896. If there be any deficiency, no judgment can be entered therefor against the plaintiff administrator. No question is raised as to whether there is any defect of parties to the foreclosure action. The judgment will be modified in accordance with the last paragraph of this opinion, and as so modified affirmed.

BURKE, BIRDZELL, CHRISTIANSON and BURR, JJ., concur.