ALM CONSTRUCTION COMPANY, a Minnesota Corporation, Plaintiff-Respondent,

v.

Marjorie VERTIN, Defendant-Appellant,

and

B. P. McCusker and Citizens First National Bank of Wahpeton, North Dakota, Defendants.

ALM CONSTRUCTION COMPANY, a Minnesota Corporation, Plaintiff-Appellant,

v.

Marjorie VERTIN, B. P. McCusker and Citizens First National Bank of Wahpeton, North Dakota, Defendants-Respondents.

No. 7997.

Supreme Court of North Dakota.

Dec. 10, 1962.

Rehearing Denied Jan. 10, 1963.

**740**

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for plaintiff, respondent and appellant.

Johnson, Milloy & Eckert, Wahpeton, for defendant, appellant and respondents.

TEIGEN, Judge.

The plaintiff, a contractor, alleges it constructed a store building and adjacent parking lot for the defendant Miss Vertin and that the said defendant owes a balance of $15,000 on the contract and $2,500 for extra work. The plaintiff seeks to recover judgment in the amount of $17,500. It also alleges the defendant Miss Vertin deposited with the defendants McCusker and Citizens First National Bank of Wahpeton the sum of $15,000 in escrow, payable to the plaintiff in reduction of the judgment which it is entitled to. It seeks to collect the deposit and to foreclose a mechanic's lien which it filed against the improved premise for the balance.

The defendant Miss Vertin admits contract, admits unpaid contract balance of $15,000, and denies the plaintiff's claim for extra work. She alleges noncompliance with contract provisions, faulty workmanship and materials, prays for a dismissal of the plaintiff's complaint, and counterclaims for $25,000 in damages because of breach of contract. The defendants McCusker and Citizens First National Bank of Wahpeton deny generally the allegations of the complaint.

The case was tried to a jury and a verdict was returned in favor of the plaintiff against the defendant Miss Vertin in the amount of $14,000. Judgment was entered in favor of the plaintiff in the amount of the verdict, plus interest, costs and disbursements. It also decreed the judgment a lien upon the premises and ordered the defendants McCusker and Citizens First National Bank of Wahpeton to turn over to the plaintiff from the funds on deposit an amount equal to the judgment. It dismissed the defendant Marjorie Vertin's counterclaim.

The defendant Marjorie Vertin moved in the alternative for judgment notwithstanding the verdict or new trial which was denied. She takes this appeal from the judgment and the orders denying judgment non obstante and new trial. The defendants B. P. McCusker and Citizens First National Bank of Wahpeton have not appealed.

Included in the record is a second appeal. It is an appeal from two orders of the district court made after judgment by the plaintiff in this case. The first order denies plaintiff's application to have judgment enforced against the defendants B. P. McCusker and Citizens First National Bank of Wahpeton, which application was premised on the theory that the judgment has become final against them because they have not appealed or noticed any motions after the return of the verdict. The other order appealed from allowed the defendant Vertin to file as a part of her supersedeas bond the money deposited with the defendants B. P. McCusker and Citizens First National Bank of Wahpeton.

We will first consider the appeal of the defendant Marjorie Vertin.

The plaintiff is a family corporation engaged as a building contractor with offices at Minneapolis, Minnesota. The defendant

Marjorie Vertin is the owner of certain lots located at Wahpeton, North Dakota, upon which she desired to have constructed a building with adjacent parking lot to lease to National Tea Company as a supermarket. Miss Vertin owned another building in the City of Wahpeton which had been leased by National Tea Company for a number of years; however, National Tea had expressed a desire to have a new and more modern building.

During the time involved in this lawsuit, National Tea Company changed its name to National Food Stores, Inc., and, for the sake of convenience, the corporation will hereafter be referred to as National.

A contract was executed between plaintiff and the defendant Miss Vertin for the construction of a building 50 feet by 130 feet with adjacent parking lot for the agreed amount of $50,000. The contract was written on a printed form entitled "THE A. I. A. SHORT FORM FOR SMALL CONSTRUCTION CONTRACTS." It is a form issued by the American Institute of Architects for use when the proposed work is simple in character, small in cost and the stipulated sum forms the basis of the payment. The contract provides that the contractor shall furnish all of the material and perform all of the work for general construction of a building and parking lot as shown on drawings and described in the specifications entitled "National Food Store, Wahpeton, North Dakota, prepared by National Tea Company Engineering Dept." The section on General Conditions of this contract provides that it should include "the Agreement and its General Conditions, the Drawings, and the Specifications" and provides that two or more copies of each shall be signed by both parties, one signed copy to be retained by each. It also provides that the documents shall be considered as one. No drawings or specifications were signed by either party nor attached to the contract. Each party now claims to submit the intended specifications but the two sets of specifications vary.

The plaintiff contends it was agreed that the building and parking lot were to be constructed like the one built by the plaintiff and occupied by National at Sleepy Eye, Minnesota, in 1958. It claims there were no written specifications; however, near the completion of the construction, plaintiff and a representative of National drew a set of specifications which plaintiff now submits as the specifications intended by the parties under the contract. The defendant denies any such agreement or intention and contends the specifications she offers in evidence, modified to provide a 50 foot building and 60 foot parking lot, were agreed upon as the specifications intended in the contract. This contention is premised on the following background: Before the contract was entered into between the plaintiff and defendant, National had furnished the defendant a set of specifications for a building 60 feet by 130 feet and adjacent parking lot to be constructed on that part of the premises not occupied by the building. At a preliminary negotiation held at Wahpeton, attended by the plaintiff, a representative of National, the defendant and her father, these specifications were considered and the plaintiff at that time made and tendered its bid to construct the premises for the amount of $54,600. The bid was not accepted for the reason that National's head office in Chicago desired a wider parking lot and would not agree to leasing the premises as described in the plans and specifications. The defendant's lots were 110 feet by 132 feet and the parking lot would then be 50 feet by 132 feet if a building 60 feet by 130 feet were constructed thereon. No contract resulted. National later indicated it would lease a building 50 feet by 130 feet, allowing for an adjacent parking lot 60 feet by 132 feet. No new specifications were drawn. The plaintiff by letter advised defendant it would be willing to construct a National Tea Company Food Store 50 feet by 130 feet, complete with parking lot, "built to the National Tea Company's specifications" for the sum of $50,000. Defendant interpreted the offer as an offer to construct a building conforming to National Tea Company's

specifications in her possession, except the building would be reduced in size to 50 feet in width and the parking lot increased to 60 feet in width, and testified she so understood the intent when she signed the contract. She testified these were the specifications on which plaintiff formerly bid. The contract was signed and a building and parking lot were constructed.

A ten year lease with two automatic extensions of five years each had been executed between National and the defendant. It appears the lease was executed about three months before the building contract was executed but after she had received the proffered specifications from National. The lease contains a construction clause whereby the lessor agreed to construct a building 50 feet by 130 feet "all in accordance with plans and specifications to be approved by Lessee." Construction was to begin on or before September 1, 1959. Construction commenced August 30, 1959. National occupied the constructed building and commenced paying rent in the month of December 1959. There was typed into the printed lease form a paragraph reading as follows:

"It is understood and agreed that Lessee's blueprints and specifications are part of this lease and shall have as much force as printed and other portions thereof."

Another typed paragraph states:

"This lease is conditioned upon the lessor's securing a firm contract for the construction of the building required under this lease for a sum not to exceed $50,000.00."

The only written specifications supplied to either of the parties for the proposed building by National, before or on the date of the lease or the contract, were those possessed by the defendant. The construction contract contained the following paragraph:

"THE ENGINEERING DEPARTMENT OF NATIONAL TEA COMPANY shall have general supervision of the work. He has authority to stop the work if necessary to insure its proper execution. He shall certify to the Owner when payments under the contract are due and the amounts to be paid. He shall make decisions on all claims of the Owner or Contractor. All his decisions are subject to arbitration."

National's engineer supervised the construction, approved the building and parking lot as constructed, and recommended that final payment be made.

At the trial the court on objection refused to admit the defendant's proffered specifications, marked Defendant's Exhibit #1, on the ground of lack of foundation. Refusal to admit the defendant's specifications in evidence as an exhibit is alleged as one of the errors in this appeal. The court rejected these specifications for the reason that there was no evidence that National had approved them or that they were a part of the contract and, therefore, there existed a lack of foundation necessary to admit them in evidence.

The contract was prepared by the plaintiff in duplicate and unsigned copies thereof were forwarded, by mail, to the defendant Miss Vertin. They were received by her on August 5, 1959. Previous to this, and on July 14, 1959, the plaintiff had written a letter to Miss Vertin's father, Frank Vertin, who was closely associated with her in this project, advising that it was confirming their price of $50,000 to construct a National Tea Company Food Store 50 feet by 120 feet, complete with parking lot, "built to the National Tea Company's specifications." Plaintiff's president, who sent this letter, testified the letter intended to describe a building 50 feet by 130 feet. Subsequent to the receipt of this letter and the two copies of the proposed form of contract, the defendant wrote the plaintiff a letter in which she acknowledged receipt of the two copies of the contract but stated she did not receive "the revised plan

and specifications you mentioned in your last letter." The letter to which she refers is not in evidence. She continues the letter and states:

"Before signing this contract I would like to know what changes are being made."

On August 7, 1959, the plaintiff replied by letter, in part, as follows:

"The contract I sent up calls for the buildings to be built according to the National Tea specifications, and for their approval. But because of the store changing size, a complete new layout was made which would have to be approved by the various department heads, before it is final."

A "layout" is described in the evidence as the interior store arrangement, location of counters, outlets, utility services, interior walls, etc. National was to furnish its own fixtures.

The suggested form of contract forwarded by plaintiff to the defendant states in part:

"The contractor shall furnish all of the material and perform all of the work for General construction—building 130' x 50' & Parking Lot as shown on the drawings and described in the specifications entitled NATIONAL FOOD STORE, WAHPETON, NORTH DAKOTA, prepared by National Tea Company Engineering Dept. all in accordance with the terms of the contract documents."

Without further correspondence the defendant Miss Vertin signed both copies of the contract and forwarded one copy to the plaintiff. The contract was dated August 4, 1959, and construction was commenced August 30, 1959.

During the construction period various arguments occurred pertaining to various phases of the work. The construction was being supervised by a Mr. Hurkman, who was the maintenance and construction superintendent for National. He testified as to various disagreements with the plaintiff pertaining to specifications and that he was overruled by a Mr. Nielson also of National. Mr. Nielson testified he was in charge of the real estate department and obtained the lease to the building to be constructed and that it was he who forwarded the specifications, Defendant's Exhibit #1, to the defendant's father. These specifications were referred to in his cover letter as "our specifications." Mr. Nielson testified, however, that his job was completed when he obtained the lease from Miss Vertin and he had nothing to do with the construction part. Mr. Hurkman approved the building. There is no indication that National had a standard set of specifications but it appears there were minimum requirements. Mr. Hurkman testified the specifications which the defendant offered were the usual specifications for National Tea Stores, irrespective of the width of the store. He approved the building because the construction was satisfactory to him. There is no evidence that he approved it as being in compliance with any particular set of specifications, only that the building as constructed would suit the purposes of National. When the building was nearly completed, a set of specifications was drawn by Mr. Alm, president of the plaintiff company, and Mr. Hurkman of National. It is clear an attempt was made to draw this set of specifications to comply with the building as constructed. Plaintiff offered them in evidence and they were received. The written specifications received in evidence clearly were not a part of the contract. They were not drawn until the building was nearly complete, long after the contract had been executed. There is no evidence that the defendant Miss Vertin agreed to them or that she had any part in drawing them, nor is there any evidence of modification of the contract. However, there was no objection made when the specifications marked Plaintiff's Exhibit #29 were offered and they were received in evidence. The re-

ceipt of said Exhibit #29 is not raised as error in this appeal.

There was also introduced in evidence a letter dated February 15, 1960, after the building was completed, directed to the defendant Miss Vertin and written by Mr. Hurkman. In it he quotes a paragraph which he states is taken from the "SPECIFICATIONS ON PROPOSED BUILDING AT WAHPETON, NORTH DAKOTA." Upon comparison this paragraph is verbatim to a paragraph contained in the defendant's proffered specifications and is not found in the specifications introduced by the plaintiff. We have searched the record and have been unable to find any indication that National would not have approved a building built in accordance with the specifications offered by the defendant. The specifications placed in evidence by the plaintiff and those offered by the defendant vary and differ in several respects. The specifications offered by the defendant, although not admitted in evidence, were submitted with this appeal and are contained in the settled statement of the case. The comparison of the two sets of specifications, as set up by the plaintiff in his reply brief, indicates the following differences:

|  | Pl. Exhibit #29 | Def. Exhibit #1 |
|---|---|---|
| TOWER | 28' | 36' |
| ROOF | Or equal 3 Ply; 10 yr. guarantee | Or equal 4 ply; 20 yr. guarantee |
| CEILING HEIGHT | 11' | 12' |
| PARTITIONS Facing on sales room side: | 1/2" sheet rock | 5/8" sheet rock |
| VESTIBULE DOORS | Hung on off center pivots | Hung on center pivots |
| FLOOR | 4" concrete slab | 4" reinforced concrete slab |
| In meat processing room: | 1/8" Asphalt floor tile | 3/32" Vinyl asbestos floor tile |
| Color of Tile: | To be approved by National Food Stores, Inc. | To be #868 Mint White by Armstrong Company |
| HEATING Gas Hot Water Heater: | 20 gallons no warranty mentioned | 50 gallons 10 yr. warranty |
| PLUMBING Bldg. to be supplied with: | water & sewer connections | Gas, water & sewer connections |
| Water service: | as supplied by City at curb | No less than 1" copper service with a 1" meter |
| Water service: | (nothing mentioned) | A non-freeze type sillcock to be installed in front of building |

| | | |
|---|---|---|
| MISCELLANEOUS | To supply & install all required hardware on all front & rear doors (no mention of screens) | To provide screens for rear doors & supply all required hardware on all front & rear doors. Shall make all rear windows burglar proof with iron bars. |
| SIDEWALKS | Omitted completely | Sidewalks abutting property to be in first class condition. |
| PARKING LOT | Black top Surfacing: Compacting rough grades; fine grading; stone base course; 2" asphalt surfacing; Fine grade over rough grade and compact with not less than 10-ton roller; Dig out remaining soft spots and fill with nonplastic material such as stone or slag. | Blacktopped. Spread & level base course 6" crushed limestone, size ½" to 1" leveled and rolled to hard surface; 2 inches premixed emulsified asphalt; After rolling, a seal coat of emulsified asphalt at rate 2/10 to 3/10 gallon per sq. yard. Curb cuts for ingress and egress. Yellow markers and bumpers securely anchored in ground as building; Maintain pavement for 2 years after payment. Settling, heaving, buckling, ravelling, cracking and other defects to be remedied. Base failures responsibility of Paving Contractor. Good drainage to street or alley. Places where water stands must be remedied." |

The written contract was ambiguous because of omission of the specifications. The contract had not been executed in accordance with its terms and provisions. Drawings and specifications had not been signed by the parties to the contract, nor was a signed copy retained by each as specifically provided for in the contract. Each party has now attempted to supply the omission. The extrinsic evidence offered by the plaintiff was received. It consisted of the defendant's lease, some letters between the parties, the written specifications prepared by plaintiff and oral testimony. The offer of the defendant was rejected. Both parties agree extrinsic evidence is necessary to construe and interpret the contract. It is not an attempt on the part of either to vary the terms of the contract but to clarify its meaning. It is clear the writing alone does not afford the means to reach a construction. The object of construing a contract is to ascertain the intention of the parties as it existed at the time of contracting. Sec. 9-07-03, N.D.C.C.; State v. Gulke, 76 N.D. 653, 38 N.W.2d 722; Baird v. Fuerst, 60 N.D. 592, 235 N.W. 594; Wisner v. Field, 15 N.D. 43, 106 N.W. 38. Where the contract is written the intention of the parties must, if possible, be ascertained from the writing alone. Sec. 9-07-04, N.D.C.C. However, where a contract is ambiguous and it is impossible to ascertain the intention of the parties from the writing alone,

it is proper to search for its true meaning by reference to the circumstances under which it was made and the matter to which it relates. Sec. 9-07-12, N.D.C.C.; Hazelton Boiler Co. v. Fargo Gas & Electric Co., 4 N.D. 365, 61 N.W. 151; Powell v. International Harvester Company, 41 N.D. 220, 170 N.W. 559; Battagler v. Dickson, 76 N.D. 641, 38 N.W.2d 720 and State v. Gulke, supra. It must be interpreted so as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable, lawful, reasonable and capable of being carried into effect. Young v. Metcalf Land Co., 18 N.D. 441, 122 N.W. 1101; Bronson v. Chambers, 51 N.D. 737, 200 N.W. 906; Baird v. Fuerst, supra; Hedrick v. Stockgrowers' Credit Corporation, 64 N.D. 61, 250 N.W. 334.

■ Since the writing alone does not afford the means to reach a construction and the plaintiff had been permitted to introduce extrinsic evidence to explain it, it was prejudicial error for the trial court to reject the defendant's offer if sufficient foundation was laid. When a written construction contract refers to specifications that are not annexed or otherwise identified and two sets of specifications are offered in evidence, it is for the jury to determine which one is the set of specifications referred to. Cook v. Littlefield, 98 Me. 299, 56 A. 899. Evidence as to the meaning of an ambiguous contract is admissible. Hazelton Boiler Co. v. Fargo Gas & Electric Co., supra.

We find, under the circumstances, there was sufficient foundation to admit Defendant's Exhibit #1 in evidence and it was prejudicial error to reject it.

In her motion for new trial, the defendant Marjorie Vertin specifies it was error not to allow various witnesses to testify in support of her counterclaim as to the expense of repairing the building and parking lot to conform to the specifications submitted by the plaintiff; that it was error not to allow her witnesses to testify as to the expense of repairing the building and park-

ing lot to conform to the specifications offered by the defendant and that it was error not to allow witnesses to testify as to the difference in value between the building as constructed and the value the building would have if constructed in accordance with the specifications offered by the defendant. With reference to the two latter specifications of error, we need not pass on them for the reason that the defendant's proffered specifications were not in evidence.

■ The first specification, however, is meritorious. The defendant in her counterclaim pleaded defective work and materials and prayed for damages. The court instructed the jury that a substantial compliance with the building contract does not absolve the builder from responding in damages for his neglect or omissions and, if the jury should find plaintiff has substantially complied with the contract but that omissions and defects occurred in the building and in the parking lot, they must first determine whether the defects resulting in the breach of the contract may be remedied without taking down and reconstructing a substantial portion of the building or the parking lot and then instructed on the measure of damages as follows:

"If you find that the defects may be remedied, the amount of damages to the owner occasioned by such breach is the expense of making the work conform to the contract. If you find that the defects are such that they cannot be remedied without a reconstruction of a substantial portion of the work, the amount of damages which the owner may recover is the difference between the value of the defective structure and parking lot, and what the value of the structure and parking lot would have been if completed according to the contract."

On the basis of the law of the case, as correctly set forth in the court's instructions, it would have been proper to have allowed defendant's witnesses to testify as to the expense of repairing the building and

parking lot to conform to the provisions of the contract, as interpreted by the jury, and it was error for the court to exclude it. The court excluded all evidence in proof of damage offered on the theory that, if the defects may be remedied, the amount of damages occasioned by the breach is the expense of making the work conform to the contract on the ground that it was not a proper measure of damages. The court correctly stated the law but erroneously rejected the evidence. Karlinski v. P. R. & H. Lumber & Construction Co., 68 N.D. 522, 281 N.W. 898.

■ The defendant next asserts it was error to exclude the testimony of the defendant Miss Vertin, in support of her counterclaim, as to the market value of a building and parking lot if constructed according to the specifications introduced in evidence by the plaintiff. She was permitted to testify as to the fair and reasonable market value of the building and parking lot she received but it was her contention that they were not up to the standards prescribed by the specifications introduced by the plaintiff. The plaintiff objected on the ground of competency of the witness and the objection was sustained. The court permitted the witness to testify as to the fair and reasonable market value of the building she received but would not permit her to testify as to her opinion of the fair and reasonable market value of a building and parking lot, if constructed in accordance with the plaintiff's specifications. We agree that the witness, as owner of the existing building and parking lot, was qualified to testify as to its value. McCaffery v. Northern Pacific Ry. Co., 22 N.D. 544, 134 N.W. 749.

The mere fact of ownership does not, however, qualify a person as an expert on other matters than the value of her property but the witness becomes subject to the same rules as any nonexpert witness giving opinion evidence. In re Heart River Irrigation District, 78 N.D. 302, 49 N.W.2d 217.

■ In Minneapolis Threshing Machine Co. v. McDonald, 10 N.D. 408, 87 N.W. 993, the defendant was sued for damages for breach of contract. He had entered into a written contract with the plaintiff for the purchase of a separator. He refused to accept the separator when it was delivered, being dissatisfied with giving security in the form of a chattel mortgage on six horses as he had agreed in the contract. The measure of damages was the difference between the contract price agreed upon and the market value of the property at the time and place of refusal to accept. The defendant, in diminution of damages, offered to testify as to the value of the separator at the time of refusal. The question was objected to on the ground that the defendant had not shown himself competent to testify as to such value, the only evidence of competency being that his business was farming and threshing. The evidence was rejected and this court held the defendant was not competent to testify as to the value of the property purchased by him without further foundation.

The defendant cites several cases as authority that an owner is competent to testify as to the value of his property but they are not applicable to a proposition where the property on which the opinion is sought is nonexistent. She also cites Knutson v. Lasher, 219 Minn. 594, 18 N.W.2d 688, in which the Minnesota Court, in the body of its opinion, said:

"The owner of property (Floyd E. Lasher was an owner) is competent to testify as to the *value of the building as it would have been if constructed according to contract,* its value as actually constructed, and the damages occasioned by faulty performance of the contract." (Emphasis supplied.)

The case involved the foreclosure of a mechanic's lien and Lasher testified that if the building had been constructed according to contract, its value would have been $83,000; that as actually constructed it was from $72,000 to $73,000 and that his damages were from $10,000 to $11,000. An architect also testified as to the respective

values at $83,000 and $80,000 and damages of $3,000. The trial court found the damages to be $2,700. The judgment was affirmed, except as modified to include interest. Thus the statement in the body of that opinion emphasized in the above quote appears to be merely dicta. The court did not incorporate the statement as law in its syllabus. We have found no other case and none has been pointed out to us that this is the rule of law. We do not believe it is.

> "The liberal rule that permits an owner to testify concerning the value of his property is based upon a presumed familiarity with the subject, acquired from having purchased it or from having gained a knowledge in some other way, sufficient to qualify him." Company A, First Reg., N.D.N.G., Train. School v. Hughes, 49 N.D. 626, 193 N.W. 144.

> " * * * his testimony is, because of his relationship as owner, competent and admissible on the question of value of his property. His ownership, regardless of his knowledge, qualifies him to testify." McCaffery v. Northern Pacific Ry. Co., 22 N.D. 544, 134 N.W. 749.

There is no presumption shown of "familiarity with the subject" based on "ownership" or "relationship as owner" of a building described in the specifications if it is not the building received. The premise upon which the rule is bottomed is absent. Competency was not established and the evidence was properly excluded.

■ We next consider two specifications of error which are related. The defendant specifies (1) it was error for the court to permit Robert G. Alm to testify as to his opinion of the fair and reasonable market value of the building and parking lot when turned over, and (2) it was error to permit the said witness to testify as to the plaintiff's costs of the improvement and that plaintiff lost money on the contract. An examination of the record discloses the testimony referred to in these specifications of error was received after the defendant had rested. It was rebuttal testimony. The defendant and the other witnesses in the defendant's main case, in support of her counterclaim, had introduced opinion evidence as to the value of the building and parking lot delivered by the plaintiff. Therefore, it was not error to permit the plaintiff in rebuttal to introduce opinion evidence of the value of the building and parking lot. The court properly overruled the objections that the evidence was incompetent, irrelevant and immaterial. It also properly overruled the objection that no proper foundation was laid as the witness was the president and acting manager of the plaintiff corporation which had built about 20 similar structures, most of which were leased by National, and he was familiar with costs and values of similar type construction. It was also proper to overrule the objection that it was not a proper measure of damages because it was rebuttal evidence. Examination of the record does not disclose this witness testified that the plaintiff took a loss. After stating plaintiff's cost of the building, the witness was asked this question: "Does that include any profit whatsoever?" To which he answered: "No profit." The answer to this question explained that the witness had not included profit in the cost figure to which he testified. On cross-examination defendant developed that the cost figure testified to included that portion of the company's overhead allocated to this project and salary paid the witness. The value of property not having an established market value is always a matter of opinion and a witness as to value should be permitted to relate facts upon which the opinion is founded. Such facts are only pertinent to the inquiry as giving weight and probative force to the testimony. The testimony relative to the cost went to the weight of the testimony on value and was not error. Seale v. Corley, Tex.Civ. App., 229 S.W.2d 643; People v. LaMacchia, 41 Cal.2d 738, 264 P.2d 15 and Builders Steel Co. v. Commissioner of Internal Revenue, 8 Cir., 179 F.2d 377.

The next specification of error deals with the deposit of $15,000, an amount equal to the unpaid balance of the contract which had been deposited by the defendant Miss Vertin in the Citizens First National Bank of Wahpeton and of which bank the defendant McCusker is president. Plaintiff in its complaint pleaded that defendant made a deposit of $15,000 in said bank under an escrow agreement which provided the bank and the defendant McCusker would pay said money to the plaintiff after the plaintiff had filed a release of all liens arising out of the contract covering labor and material. The defendant argues there is no consideration and the deposit cannot be considered to be in escrow but rather it is a special deposit under control of the defendant. The court did not treat the deposit as being in escrow but treated it as a conditional or special deposit. By its judgment the court ordered the bank and its president to pay from said deposit the amount of the judgment to the plaintiff. The record shows the plaintiff furnished the defendant bank releases of mechanic's liens, mechanic's lien waivers and receipts in all classes for which mechanic's liens could be filed, except labor. The money was not paid to the plaintiff because the defendant Miss Vertin, the depositor, instructed the bank not to pay the same.

The defendant in her appeal specifies as error the court's failure to grant defendant's motion to set aside the judgment notwithstanding the verdict for the reasons that the plaintiff had failed to establish the allegations of its complaint which it was entitled to recover under the terms of the deposit and that plaintiff did not prove the deposit constituted an acceptance of the performance of the contract or a waiver of the breach of performance.

Defendant also specifies it as error to have denied her alternative motion to set aside the verdict and grant a new trial on the ground that the evidence pertaining to the deposit, as a matter of law, established no right in the plaintiff to recover against this defendant. We find no error here. Plaintiff's suit is premised on contract for a fixed sum. The payments made and the unpaid balance of the contract are not in dispute. The deposit of $15,000 was equal in amount to the unpaid balance of the contract. The case was not submitted to the jury on the theory that the right of plaintiff to recover stood or fell on proof that the deposit constituted an acceptance of the performance of the contract or a waiver of the breach thereof. It is not necessary to the plaintiff's recovery against the defendant Miss Vertin that it show or prove that the deposit gives it the right to recover against this defendant.

The defendant next specifies it as error to have denied her alternative motion for new trial because of the court's failure to give certain requested instructions. In view of the necessity of a new trial, we need not pass on the merit of the requested instructions. We have reviewed them in connection with the record upon which the case was submitted to the jury and the instructions given by the court. We do not find that any of the refusals to instruct as requested resulted in prejudicial error in view of the state of the record.

Defendant next specifies it was error to deny her motion made during the trial to amend paragraph 5 of her original answer. In paragraph 5 of the original answer the defendant Miss Vertin admits the deposit with the defendant bank of $15,000 as being in escrow. The defendant moved to amend this paragraph of her answer whereby she would admit the deposit, together with her letter of instructions to the bank to be set forth therein. The letter of instructions referred to, written by defendant's attorney, specifically states, in part, as follows:

"This check is sent to you for the purpose of placing this sum in escrow subject to the following conditions: * * *."

The only difference between the suggested amendment and the answer, as we see it,

is that the amendment would plead a fact, whereas the original answer pleads a conclusion. Furthermore, the defendant was not injured because the court treated the matter as a deposit rather than an escrow, which is the most that defendant could have hoped to gain by the amendment.

The judgment against the defendant Miss Vertin must be reversed and a new trial granted.

■ There is also a dispute as to plaintiff's claim for extra work and materials not covered by the contract for which the plaintiff asks $2,500. We cannot determine from the verdict whether or not the jury allowed this claim. A single sum verdict was returned. The defendant claims the work and materials were agreed to as a part of the contract and were not extra. It is a jury question and by necessity must be determined in the new trial.

We will now consider the appeal of the plaintiff from two orders made by the district court on two motions. They were noticed and heard subsequent to the entry of judgment and the order denying the defendant Vertin's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

Preparatory to filing an appeal, the defendant Marjorie Vertin moved the court for an order staying enforcement of the judgment pending appeal and fixing the amount of a supersedeas bond. She also moved that the court enter an order authorizing the defendants B. P. McCusker and Citizens First National Bank of Wahpeton to release to the defendant Marjorie Vertin the deposit of $15,000 upon her filing an adequate supersedeas bond. A few days later and before the defendant's motion was heard, the plaintiff noticed its motion praying that the court order and determine that the defendants B. P. McCusker and Citizens First National Bank of Wahpeton pay to the plaintiff, from the said deposit of $15,000, the amount of their judgment. It appears both motions were heard at the same time but separate orders were issued by the court.

The contract sum was $50,000 and $35,000 of this amount was paid during the construction period. The balance of $15,000 was deposited by the defendant Vertin in the Citizens First National Bank of Wahpeton, together with a letter of instructions. The conditions of the deposit were set forth in the letter. The defendant Vertin determined these conditions had not been complied with as no mechanic's lien waivers or receipts were filed covering labor. The moneys were not paid to the plaintiff. The bank upon receipt of these funds, together with the letter of instructions, caused a bank money order to be executed in which the plaintiff is named as payee. It was drawn on the defendant bank and the defendant bank retained possession thereof.

Before the court held its hearing on the motions, the defendant had served and filed her notice of appeal. The appeal was taken by the defendant Marjorie Vertin from the judgment and the order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial.

The defendants B. P. McCusker and Citizens First National Bank of Wahpeton have not appealed nor have they taken any steps in preparation therefor.

The amended judgment decrees that the defendant Vertin is indebted to the plaintiff in the amount of $14,000, plus costs, disbursements and interest, that plaintiff has a lien on defendant Vertin's property and then provides as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, That the defendants, B. P. McCusker and Citizens First National Bank of Wahpeton, North Dakota, who hold a deposit from the defendant, Marjorie Vertin, in the sum of $15,000.00, turn over to the plaintiff the amount of the deposit to the extent of the verdict in favor of the plaintiff, together with interest and

plaintiff's costs and disbursements herein, and  *  *  *."

The verdict finds against the defendant Vertin only. It states:

"We, the jury impaneled and sworn to try the above entitled action, do find for the plaintiff, Alm Construction Company, and against the defendant, Marjorie Vertin, and assess plaintiff's damages at the sum of fourteen thousand Dollars, with interest at the rate of four per cent per annum from the 10th day of February, 1960."

No verdict was returned against the defendants B. P. McCusker and Citizens First National Bank of Wahpeton and no money judgment was entered against them. The court directed the delivery of personal property, which consisted of a portion of the money on deposit, to the plaintiff by the Defendants B. P. McCusker and Citizens First National Bank of Wahpeton.

■ The plaintiff in support of its motion argues it has a vested interest in the money deposited and that it is rightfully theirs because the bank, on receipt of the deposit from the defendant Vertin, converted it into a bank money order made payable to the plaintiff. However, the bank retained possession and control of the bank money order. There is no evidence of delivery and the court held the money was not held in escrow but was a special deposit. We find no error here.

The plaintiff also argues the judgment has become final as to the defendants B. P. McCusker and Citizens First National Bank of Wahpeton for the reason that these defendants have taken no suspensive steps by motion, appeal, or otherwise. The defendant Vertin, who is the principal defendant in the case, did appeal from the whole of the judgment and the orders denying judgment non obstante or new trial.

The defendant bank and its president have no interest in the action, except to make legal distribution of the funds in their possession and not to incur additional liability unto themselves. It is self-evident the amount the defendant bank is to pay the plaintiff from the deposit, if any, is dependent upon the results of the appeal. The depositor has not authorized the bank to release the money and the requirements of the instructions have not been met in that labor lien waivers have not been filed. Payment is dependent upon the court's order. To compel the payment of a part of these funds to the plaintiff when appeal has been taken from the judgment may work to the disadvantage of the bank. It may also work disasterous results to the rights of the defendant Vertin. The judgment against the defendant bank and its president is entirely dependent and intertwined with the main action. The defendant Vertin, as owner, has an interest in the money in the hands of the bank. She is an aggrieved party and has appealed from the whole judgment. This includes that part of the judgment ordering the defendants to pay the defendant Vertin's money to the plaintiff. The defendant bank is without concern as to which litigants shall receive the funds deposited with them. The real contest in the case is between the plaintiff and the defendant Vertin and not between the plaintiff and the defendant bank and its president.

■ Only those persons having an interest in the subject matter of the appeal need be made parties thereto. In re Novak's Estate, 73 N.D. 41, 11 N.W.2d 64. A party not aggrieved by a judgment cannot appeal. King v. Stark County, 72 N.D. 717, 10 N.W.2d 877. Only a party aggrieved by the judgment has a right to appeal therefrom. Application of Hvidsten Transport, Inc., (N.D.), 113 N.W.2d 73; King v. Stark County, supra; Pearce v. North Dakota Workmen's Comp. Bureau, 68 N.D. 78, 276 N.W. 917 and Re Ecklund, 67 N.D. 140, 270 N.W. 347.

■ The judgment insofar as it orders the bank and its president to pay the mon-

eys over to the plaintiff operates upon the rights of property and bears directly upon the defendant Vertin's interest as the owner of the money on deposit. She has a pecuniary interest therein and we hold she is a party aggrieved and entitled to appeal from the whole of the judgment.

The court, we feel, properly denied the plaintiff's motion for the reason that the appeal by the defendant Vertin was suspensive as to that part of the judgment ordering the bank and its president to pay the judgment from the deposit to the plaintiff.

On the defendant's motion, the court ordered the clerk of the district court to return to the bank Plaintiff's Exhibit #2, being the bank's money order. It ordered the defendants B. P. McCusker and Citizens First National Bank of Wahpeton to pay the said bank money order and to reinvest the funds in a certificate of deposit on interest in the defendant bank payable to the clerk of the district court and to deliver said certificate of deposit to the said clerk. The clerk was ordered to accept the certificate of deposit and receipt for it. The bank was ordered not to destroy or deface the bank money order but to hold it in its present form as a part of their permanent records subject to its being subpoenaed. The court's order then provided the defendant Marjorie Vertin should purchase an additional certificate of deposit in the amount of $2,500 made payable to and deposited with the clerk of the said court. It then ordered that the depositing with the clerk of the two certificates equalling $17,500 would constitute an adequate and proper supersedeas bond in the action pending the final disposition of the defendant Marjorie Vertin's appeal to the Supreme Court. It also ordered that such certificates of deposit and supersedeas bond "shall only be paid out upon proper order of this court in the above-entitled cause."

If the action taken by the lower court of the defendant's motion is permitted to stand, the result would be a discharge of the supersedeas bond if the judgment is reversed. If, on appeal, the judgment is reversed and a new trial granted effecting the discharge of the supersedeas, the plaintiff will have lost a valuable right, the right to collect its judgment from the deposit if successful in the new trial. The court by its order changed the character of the deposit from a special deposit in the bank to a deposit in lieu of an undertaking which has the same effect as required of an undertaking for supersedeas purposes and, under Section 28-27-10, N.D.C.C., shall be held to answer the event of the appeal upon the terms prescribed for the undertaking in lieu of which the same is deposited. This works to the prejudice of the plaintiff in the new trial because the deposit, which it asks be paid to it in its pleadings, will not longer be in the hands of the bank or its president who are named as defendants. It, therefore, will have lost a valuable right.

For these reasons the district court was in error when it ordered the amount of the deposit to be placed in the hands of the clerk of the district court as a supersedeas bond. We reverse the order and direct the district court to order the return of the money to the bank and its president, who shall revalidate the bank money order which was received as an exhibit in the trial of the case and, upon revalidation, redeliver the same as Plaintiff's Exhibit # 2 to the clerk of the district court where it shall be held with the other exhibits to abide the final decision of the court.

The plaintiff's appeal from the court's orders was taken subsequent to the defendant's appeal, but all three appeals were certified to us in one record. Having determined that the judgment shall be reversed and a new trial granted, the question involved in the plaintiff's appeal pertaining to the adequacy of the supersedeas bond has become moot. Continued existence of a

controversy pending appeal is essential to appellate practice. G. W. Jones Lumber Co. v. City of Marmarth, 67 N.D. 309, 272 N.W. 190.

The judgment is reversed and a new trial is granted.

The order on the supersedeas bond is reversed and the district court is directed to reinstate the status quo of the money on deposit as described herein.

The appeal from the order denying the plaintiff's motion for payment from deposit is affirmed.

SATHRE, C. J., and BURKE, MORRIS and STRUTZ, JJ., concur.